FILED ✓  LODGED ___
RECEIVED ___  COPY ___

JUN 1 3 2025

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY _____ DEPUTY

UNITED STATES DISTRICT COURT
DISTRICT OF ARIZONA-PHOENIX DIVISION

CARISSA PERRY

Plaintiff,

V.

EXETER FINANCE LLC;
COBRA EQUITY HOLDCO LLC,

Defendants.

Civil Action Number:

**CV-25-1552-PHX-DWL**

**COMPLAINT**

**INTRODUCTION**

This action arises from a calculated scheme of financial misconduct that culminated in the issuance of a fraudulent Form 1099-C, unlawful credit reporting, and sustained economic retaliation—all following my full performance under a binding settlement agreement. I bring this action as a consumer who paid over $19,900 toward a $13,967 auto loan originated in July 2020, prior to the repossession of the vehicle in 2023. After repossession, Defendants failed to issue a statutorily compliant accounting of sale proceeds, refused to disclose the purchaser or sale terms, and failed to properly transfer title in accordance with Arizona law.

In October 2024, I executed a written Settlement Agreement with Defendants to resolve the remaining balance in full. I satisfied every obligation under that agreement. In response, Cobra Equity Holdco LLC issued an IRS Form 1099-C confirming cancellation of debt—an action that legally extinguished the remaining obligation and triggered statutory duties under federal and state law.

1

Despite executing the agreement and issuing a 1099-C, Defendants continued furnishing derogatory credit data. They reported the tradeline as "charged-off," "in collections," and linked to a repossession—while appending language such as "settled for less than full balance" that was neither authorized by the contract nor supported by law. These representations are materially false, deliberately misleading, and were verified in response to formal disputes in violation of 15 U.S.C. § 1681s-2(b).

As a direct result, I have been unable to secure vehicle financing. I have incurred substantial rental expenses and suffered measurable reputational damage tied to a tradeline that no longer reflects the legal status of the debt.

This Verified Complaint asserts claims under the **Fair Credit Reporting Act** (15 U.S.C. § 1681s-2(b)), **Fair Debt Collection Practices Act** (15 U.S.C. §§ 1692e, 1692f), **Truth in Lending Act** (15 U.S.C. § 1601 et seq.), **Arizona Uniform Commercial Code** (A.R.S. § 47-9612 et seq.), and the **Arizona Consumer Fraud Act** (A.R.S. § 44-1522). I also assert claims for **fraud, unjust enrichment, breach of contract,** and **declaratory relief** as to the legal effect of the Form 1099-C. Each claim is supported by authenticated evidence, including the original retail installment contract, the executed settlement agreement, Form 1099-C, credit reporting data, and proof of resulting harm.

1. This is a civil action for damages, declaratory relief, and injunctive relief arising under federal and state consumer protection laws, including, but not limited to, the Fair Credit Reporting Act ("FCRA"), the Fair Debt Collection Practices Act ("FDCPA"), the Truth in Lending Act ("TILA"), the Internal Revenue Code ("IRC"), and the Arizona Consumer Fraud Act ("ACFA"). It is brought

against **Exeter Finance LLC** ("Exeter") and its parent company, **Cobra Equity Holdco LLC** ("Cobra"), for engaging in a pattern of unlawful, deceptive, retaliatory, and bad-faith conduct in connection with a motor vehicle retail installment contract. This misconduct occurred before, during, and after Plaintiff's vehicle was repossessed and resulted in ongoing consumer harm, statutory violations, and wrongful enrichment, warranting full relief under applicable law.

2. After remitting $19,905.89 on a vehicle loan bearing an unconscionable 26.25% APR, my vehicle was ultimately repossessed and liquidated in 2023. Pursuant to 26 C.F.R. § 1.6050P-1, Exeter and/or Cobra were legally obligated to issue an IRS Form 1099-C no later than January 31, 2024, reflecting any cancellation of indebtedness arising from the disposition of the collateral. They failed to comply. Instead, they deliberately withheld the mandatory tax documentation, concealed material post-sale details, and continued furnishing patently inaccurate credit information—falsely maintaining the tradeline as active, derogatory, and in collections. This misinformation remained weaponized to exert undue pressure, and I was ultimately coerced into executing a settlement under duress of reputational and financial harm. The Form 1099-C was not issued until November 2024, well after the statutory deadline, and falsely attributed cancellation to the settlement rather than the repossession event that legally triggered their reporting obligation.

3. Only after I paid $650 on October 29, 2024, pursuant to a written Settlement Agreement—more than one year after the vehicle had been repossessed and allegedly sold in or around September 2023—did Cobra Equity Holdco LLC issue

an IRS Form 1099-C under its own name and federal tax identification number. That issuance was not a routine tax formality; it was a delayed legal admission that the debt had been extinguished. A true and correct redacted copy of the 1099-C is attached hereto as **Exhibit C**. Cobra's unilateral issuance of that document—rather than Exeter's—demonstrates its operational control over the account and firmly establishes its liability for the resulting violations and harm.

4. Despite repossessing and allegedly liquidating the vehicle in September 2023, the **Arizona Department of Transportation Motor Vehicle Division (MVD)** continued to list me as the legal owner of record as of **April 28, 2025**. A certified copy of the official MVD record, bearing the Division Director's seal and signature, is attached hereto as **Exhibit M**. This discrepancy confirms that Defendants either failed to effectuate a lawful transfer of title in violation of **A.R.S. §§ 28-2051 and 28-2058**, or deliberately withheld documentation necessary to obscure the final disposition of the asset. Their refusal to finalize the title record—while simultaneously collecting on the account, issuing a Form 1099-C, and continuing to report the tradeline as charged off and derogatory—constitutes willful misconduct, regulatory evasion, and a deceptive pattern of conduct. It also undermines any assertion that the repossession and sale were conducted in a commercially reasonable manner under **A.R.S. § 47-9610**.

5. Despite the legal discharge of the debt, both Exeter and Cobra engaged in the following unlawful and retaliatory acts:

6. They continued furnishing false, negative, and contradictory credit information to consumer reporting agencies, in violation of the Fair Credit Reporting Act.

4

7. They verified materially inaccurate tradeline information after receiving formal credit disputes, despite having actual knowledge of the settlement and debt cancellation.

8. They conducted unauthorized credit inquiries after the account had been contractually resolved, constituting impermissible access under 15 U.S.C. § 1681b(f).

9. They retaliated against me by modifying and re-verifying the tradeline within twenty-four (24) hours of receiving a legal demand, in bad faith and with apparent intent to intimidate.

10. They delayed issuance of the Form 1099-C in violation of federal tax regulations under 26 C.F.R. § 1.6050P-1, falsely suggesting that the debt cancellation arose from settlement rather than repossession.

11. They operated as a single business enterprise—splitting liability between Exeter and Cobra—to manipulate corporate formalities and obstruct accountability under federal and state law.

12. As a direct and proximate result of Defendants' misconduct, I suffered substantial and measurable harm. I was denied access to more than $600,000 in vehicle financing, incurred over $15,000 in rental car expenses, and received more than two dozen adverse action notices from lenders and creditors. Additionally, I was exposed to unwarranted IRS liability due to Defendants' unlawful delay in issuing the Form 1099-C. These were not isolated clerical errors; they were deliberate and coordinated actions intended to punish me for exercising my statutory rights as a consumer.

13. I anticipate that Defendants will attempt to rely on the July 25, 2020 Retail Installment Contract to shift liability, avoid judicial scrutiny, or invoke procedural barriers. I categorically reject that position. While I acknowledge the existence of the original contract for historical context, I affirmatively assert that it was extinguished and superseded by the October 29, 2024 Settlement Agreement. To the extent Defendants attempt to revive the original contract, I assert that it is unenforceable due to statutory violations, fraud in the inducement, lack of consideration, and procedural irregularities. A true and correct redacted copy of the Retail Installment Contract is attached hereto as Exhibit A, and the Settlement Agreement is attached hereto as Exhibit B. I expressly disclaim legal liability under the original instrument. I proceed under the Settlement Agreement—the last, governing contract between the parties—which Defendants materially breached. My claims arise independently under applicable statutory and common law protections triggered by Defendants' unlawful conduct before, during, and after repossession.

14. I bring this action to demand full legal and equitable accountability. Defendants Exeter and Cobra exploited their structural advantage and operational control to manipulate consumer credit data, violate federal and state statutes, and retaliate against me for asserting my rights. I seek compensatory damages, statutory penalties, punitive damages, and all other remedies available under the Fair Credit Reporting Act, Fair Debt Collection Practices Act, Truth in Lending Act, Arizona Consumer Fraud Act, and the Arizona Uniform Commercial Code. Nothing in this Complaint shall be construed as a waiver of any right or as ratification of any

agreement or conduct challenged herein. I expressly deny any legal liability under the Retail Installment Contract or the Settlement Agreement, affirm that no enforceable obligation remains, and seek full redress for Defendants' unlawful conduct before and after repossession.

## SECTION II – PARTIES

15. **1.Plaintiff**

16. I am a natural person residing in Maricopa County, Arizona, and at all relevant times was a "consumer" as defined under 15 U.S.C. § 1681a(c) of the Fair Credit Reporting Act ("FCRA") and 15 U.S.C. § 1692a(3) of the Fair Debt Collection Practices Act ("FDCPA"). I bring this action in my individual capacity, asserting violations of federal and state law that caused direct, traceable, and compensable harm. Defendants' unlawful conduct included but was not limited to: the continued furnishing of inaccurate and derogatory credit information in violation of 15 U.S.C. § 1681s-2; unlawful debt collection activity in violation of 15 U.S.C. §§ 1692e and 1692f; the retaliatory modification of consumer reports; the unauthorized use and disclosure of personal financial data; and the delayed and improper issuance of IRS Form 1099-C in violation of federal tax reporting requirements.

To the extent Defendants attempt to rely on the July 25, 2020 Retail Installment Contract, I affirmatively assert that such reliance is legally improper. That instrument was nullified, superseded, or rendered unenforceable by statutory

violations, fraud in the inducement, and the execution of a subsequent contract. The operative agreement governing the parties' last course of dealing is the October 29, 2024 Settlement Agreement—breached by Defendants through continuing misconduct. Accordingly, I seek full compensatory, statutory, and punitive relief under all applicable legal frameworks, and I expressly reserve all rights to challenge the enforceability, legality, and formation of any contract Defendants may improperly invoke in their defense.

17. **2. Defendant Exeter Finance LLC**

18. **Exeter Finance LLC** is a foreign limited liability company organized under the laws of Delaware, with its principal place of business located at 2101 W. John Carpenter Freeway, Irving, Texas 75063. Exeter is registered to conduct business in the State of Arizona and may be served through its statutory agent: Corporation Service Company, 7955 S. Priest Drive, Suite 102, Tempe, Arizona 85284. At all relevant times, Exeter engaged in consumer lending, loan servicing, credit furnishing, and debt collection activities in Arizona. Exeter qualifies as a "furnisher of information" under 15 U.S.C. § 1681s-2 of the Fair Credit Reporting Act ("FCRA"), and a "debt collector" as defined in 15 U.S.C. § 1692a(6) of the Fair Debt Collection Practices Act ("FDCPA"), and is subject to additional liability under the Arizona Consumer Fraud Act (A.R.S. § 44-1521 et seq.) and other applicable statutory and common law doctrines.

Exeter's conduct, as alleged herein, includes unlawful credit reporting, unauthorized credit pulls, delayed tax reporting in violation of IRS regulations, and retaliatory behavior in direct response to Plaintiff's protected activity. Exeter acted both individually and in concert with Cobra Equity Holdco LLC, its parent entity, with which it operates as a unified business enterprise for purposes of evading liability, shifting assets, and circumventing regulatory accountability.

19. **3. Defendant Cobra Equity Holdco LLC**

20. **Cobra Equity Holdco LLC** is a Delaware limited liability company with its principal mailing address at 251 Little Falls Drive, Wilmington, Delaware 19808. Cobra is not registered to conduct business in the State of Arizona and has no known physical presence in this forum. However, Cobra may be served through its registered agent, Corporation Service Company, at the same Wilmington address.

21. Upon information and belief, Cobra is the parent company of co-Defendant Exeter Finance LLC. Cobra is not a passive holding entity. It affirmatively exercised creditor authority over Plaintiff's account by issuing an IRS Form 1099-C in its own name and under its own federal tax identification number. That act was not clerical—it was a legal and financial representation that Cobra had discharged debt. Cobra's direct participation in the disposition of the account places it squarely within the zone of legal responsibility for the unlawful conduct challenged in this Complaint.

22. Cobra's conduct subjects it to both **personal jurisdiction** and **liability** in Arizona. By issuing a 1099-C to an Arizona consumer involving an Arizona-based transaction and resulting in harm inside Arizona, Cobra purposefully availed itself of this forum. This act alone triggers jurisdiction under *Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945), and *Calder v. Jones*, 465 U.S. 783 (1984), as Cobra's conduct was expressly aimed at this forum and caused specific harm here. Cobra's acts were neither incidental nor indirect; they were material to Plaintiff's injury.

23. Further, Cobra was involved in approving or overseeing the settlement process, post-default credit reporting, and debt characterization. These are not passive investor functions—they are operational control points. As such, Cobra is directly and independently liable under applicable provisions of the Fair Credit Reporting Act (FCRA), Internal Revenue Code, and Arizona consumer protection law.

24. Plaintiff reserves the right to pierce the corporate veil and establish that Cobra and Exeter operated as a single business enterprise to evade compliance and manipulate liability. Cobra's refusal to register in Arizona while exercising creditor authority here underscores its strategic concealment of corporate involvement and justifies judicial inquiry into its actual role.

25. Should Cobra challenge jurisdiction, Plaintiff will seek leave to conduct targeted jurisdictional discovery, including internal communications, settlement approvals, and credit reporting directives, to demonstrate Cobra's operational control and integration with Exeter in the conduct at issue.

26. **Piercing the Corporate Veil / Single Business Enterprise Doctrine**

Cobra and Exeter are alter egos of one another and operated as a single business enterprise. They share common ownership, control, personnel, policies, resources, and business purpose. Cobra's direct involvement in the settlement process, tax reporting, and credit data oversight confirms that Exeter was not acting independently. Under Arizona law, courts may pierce the corporate veil where one entity dominates another to such an extent that the separate identities no longer exist and the corporate form is used to perpetrate a fraud or injustice. *See Gatecliff v. Great Republic Life Ins. Co., 170 Ariz. 34, 821 P.2d 725 (1991).* Here, Cobra's exercise of creditor authority—despite not being named on the underlying loan instruments—combined with its concealment behind Exeter's operations, justifies veil-piercing. Cobra is therefore jointly and severally liable for all claims asserted in this action.

27. At all times relevant to this Complaint, Cobra and Exeter operated as a single integrated enterprise. They shared common ownership, control, and decision-making authority. Cobra exercised direct oversight of account-level decisions, including post-default settlement terms, credit reporting activity, and issuance of the IRS Form 1099-C. Their coordinated conduct and functional unity strip away any corporate separateness and establish joint operational liability for the unlawful acts alleged herein.

## III. JURISDICTION AND VENUE

28. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, as this action arises under the Fair Credit Reporting Act (FCRA), the Fair Debt Collection Practices Act (FDCPA), and the Truth in Lending Act (TILA). The Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiff's related state law claims, including those brought under the Arizona Consumer Fraud Act, A.R.S. § 44-1521 et seq., as they form part of the same case or controversy and arise from a common nucleus of operative fact.

29. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to the claims occurred in Arizona. The auto loan originated here; the vehicle was repossessed and sold here; I reside in Maricopa County, and all material harm—including false credit reporting, financing denials, and financial injury—occurred within this District and continues to this day.

30. This Court has personal jurisdiction over Defendant Exeter Finance LLC under Arizona's long-arm statute and the Due Process Clause of the U.S. Constitution. Exeter purposefully availed itself of the Arizona market by originating, servicing, and collecting consumer auto loans here. It directed credit reporting, debt collection, and settlement communications into this District, and its acts caused direct, foreseeable harm to me in Arizona. Exeter's continuous and systematic contacts with this forum establish both general and specific jurisdiction.

31. This Court has personal jurisdiction over Defendant Cobra Equity Holdco LLC under Arizona's long-arm statute and the Due Process Clause of the U.S. Constitution. Cobra purposefully availed itself of the privilege of conducting activities within Arizona by issuing an IRS Form 1099-C in its own name and under its own federal tax identification number to me, a resident of Maricopa County, in connection with a retail installment loan originated, serviced, and settled within this District. This was not a clerical act—it was a substantive exercise of creditor authority that carried legal and financial consequences felt entirely within Arizona. Cobra's conduct formed part of a unified post-default scheme with its subsidiary, Exeter Finance LLC, and directly caused the harm alleged. Cobra's knowing involvement in the account's tax, credit, and settlement activity, along with its integrated control over Exeter, satisfies the minimum contacts requirement for specific jurisdiction. Jurisdiction is proper under the "effects test" set forth in *Calder v. Jones*, 465 U.S. 783 (1984), and consistent with fair play and substantial justice under *Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945).

32. Cobra Equity Holdco LLC is subject to liability under Arizona's veil-piercing and alter ego doctrines. Cobra and Exeter operated as a single business enterprise with overlapping control, functions, and interests. Cobra directed post-default activity, approved settlement terms, and issued the IRS Form 1099-C in its own name— conduct that went beyond mere ownership and into operational decision-making. Under *Gatecliff v. Great Republic Life Ins. Co.*, 170 Ariz. 34, 821 P.2d 725 (1991), corporate separateness may be disregarded where, as here, unity of

interest and control is coupled with misuse to commit injustice. Cobra used Exeter to carry out its business and evade liability. I seek to hold Cobra jointly and severally liable for the misconduct described herein.

33. To the extent any agreement governs this relationship, no term within it bars my ability to assert federal statutory claims in this Court. Defendants forfeited any contractual defenses to jurisdiction by refusing to engage in good faith following pre-litigation notice and instead retaliated against me. Their conduct—including continuing unlawful credit reporting and issuing a Form 1099-C post-settlement—waives any jurisdictional challenge and confirms that adjudication in this forum is proper and necessary.

34. This Court is the proper forum. The governing law is federal. The injury occurred in this District. The Defendants acted within this jurisdiction and will answer for it here.

## IV. STATEMENT OF FACTS

### A. Loan Origination and Terms

35. On or about July 25, 2020, I entered into a Retail Installment Sales Contract with Earnhardt Lexus in Phoenix, Arizona, to finance a used 2016 Toyota Corolla with approximately 65,079 miles. A true and correct redacted copy of the contract is attached as **Exhibit A.**

36. The total amount financed under the agreement was $13,967.24, with an annual percentage rate (APR) of 26.25%. The loan was structured for repayment over 72 months in fixed monthly installments of $390.97.

14

37. The contract reflected a total scheduled repayment amount of $28,149.84 over the full term.

38. Immediately upon execution, the retail installment contract was assigned to Defendant Exeter Finance LLC, who assumed the role of creditor and servicer for all purposes related to the account.

39. Between July 2020 and 2023, I made 47 monthly payments totaling $19,905.89 toward the account.

**B. Repossession and Statutory Violations**

40. On or about October 2023, Defendants conducted a nonjudicial repossession of my vehicle in the state of Arizona without prior court order, in accordance with A.R.S. § 47-9609. While self-help repossession is permitted under Arizona law, it is strictly conditioned upon compliance with post-repossession requirements. Defendants failed to provide a timely and compliant notice of disposition as required by A.R.S. § 47-9612, which mandates advance disclosure of the date, time, method, and terms of sale. No such pre-sale notice was ever issued. As a result, the repossession and subsequent disposition were procedurally defective, rendered the sale commercially unreasonable, and barred Defendants from seeking any deficiency under A.R.S. § 47-9626(A)(3).

41. After repossessing the vehicle, Defendants issued a post-sale "Deficiency Letter" dated November 28, 2023, without ever providing the mandatory pre-sale notice required under A.R.S. § 47-9612. The deficiency letter itself failed to disclose material terms required by A.R.S. § 47-9616, including the nature, time, and

15

method of sale, and a breakdown of sale proceeds. These omissions violated Arizona's Uniform Commercial Code and stripped me of my right to redeem or assess the reasonableness of the disposition. Pursuant to A.R.S. § 47-9615(G), Defendants are barred from recovering any deficiency.

42. The post-repossession notices issued by Defendants were materially deficient and violated A.R.S. §§ 47-9612 and 47-9616. Defendants failed to issue a pre-sale notice that complied with § 47-9612 prior to selling the vehicle on November 21, 2023. The only post-sale notice—dated November 28, 2023—failed to disclose key statutory elements, including: the method of sale (public or private), the date and time or location of sale (if public), the identity of the purchaser, and a complete and accurate breakdown of how the $5,800 in proceeds were applied. These omissions rendered both notices legally defective and extinguish any right to collect a deficiency under A.R.S. § 47-9615(G). I reserve the right to seek statutory damages under A.R.S. § 47-9625(C)(2), which entitles aggrieved consumers to monetary relief for violations of the UCC's disposition requirements.

43. Despite their statutory failures, Defendants claimed a deficiency balance of $8,599.72 without producing any admissible evidence that the repossession, sale, or application of proceeds complied with Arizona's Uniform Commercial Code. Under **A.R.S. § 47-9626(A)(3)**, a secured party that fails to provide a legally sufficient notice of disposition is barred from recovering any deficiency. The burden rests on Defendants to prove the sale was commercially reasonable under **A.R.S. § 47-9610(B)**, yet no proof has been provided. Their continued

demand for payment constitutes a **violation of Arizona law and an unfair collection practice** under **15 U.S.C. § 1692e** and **A.R.S. § 44-1522(A)**. Absent strict compliance with these statutes, the alleged deficiency is unenforceable as a matter of law.

44. Despite failing to meet statutory requirements, Defendants asserted a deficiency balance of $8,599.72. They produced no admissible evidence, no itemized accounting, and no documentation proving that the repossession sale was conducted in a commercially reasonable manner, as required under A.R.S. §§ 47-9610, 47-9612, and 47-9625. These failures violate Article 9 of Arizona's Uniform Commercial Code, extinguish any right to collect a deficiency, and trigger statutory liability. Their demand for payment under these unlawful conditions was not only improper—it was illegal.

45. As of 2025, the Arizona Motor Vehicle Division (MVD) continued to list me as the legal owner of the vehicle, despite Defendants' claim that it was sold at auction on or about November 21, 2023. This glaring inconsistency is not a clerical error—it is a legal failure. Defendants either failed to consummate a valid transfer of title under A.R.S. § 28-2058 or never completed a lawful sale at all. Their concealment of the purchaser's identity, coupled with their failure to update state records, creates a presumption of bad faith and raises a material question as to whether the vehicle was ever sold or whether it was retained or resold in violation of A.R.S. §§ 47-9610 and 47-9616. Without a proper transfer of ownership, the claimed disposition is void and no deficiency can be lawfully pursued. Defendants cannot assert a balance owed on collateral they never legally

17

conveyed. Their actions not only violate Arizona's UCC and title statutes—they undermine the entire premise of the deficiency claim.

## C. Unlawful Settlement Demands

46. In October 2024, I executed a written settlement agreement under extreme financial duress, induced by Defendants' unlawful conduct and deliberate suppression of material disclosures required under federal and state law. The agreement was presented in a coercive and deceptive manner, following an unlawful repossession and facially defective post-sale notices—violations of A.R.S. §§ 47-9612 and 47-9616—that stripped me of any fair opportunity to dispute the alleged debt or assert my statutory rights. The settlement is void and unenforceable under established doctrines of fraudulent inducement, lack of consideration, and unconscionability, and reflects a broader pattern of abusive conduct prohibited by 15 U.S.C. §§ 1692e, 1638(a), and A.R.S. § 44-1522.

47. I remitted $650 under circumstances that were coercive, deceptive, and violative of both federal and Arizona consumer protection laws. This payment was induced by Defendants' material omissions and affirmative misrepresentations regarding the legality of the repossession, the validity of the alleged deficiency, and my right to dispute the debt. The transaction lacked transparency, voluntariness, and lawful consideration. Accordingly, the purported settlement is void and unenforceable under established doctrines of fraudulent inducement, lack of consideration, and unconscionability.

18

48. The purported settlement was executed without Exeter ever curing its statutory notice deficiencies under Article 9 of Arizona's Uniform Commercial Code. Under A.R.S. § 47-9626(A)(3), a secured party that fails to issue a legally compliant notice of disposition is categorically barred from recovering any deficiency. At no point did Exeter disclose the date or method of sale, identify the purchaser, or provide a clear accounting of proceeds—violations that nullify their right to demand payment. The $650 remittance was therefore extracted through omission, coercion, and in derogation of rights that are non-waivable under Arizona law. Any continued reliance on this agreement constitutes an extension of unlawful collection activity in direct violation of A.R.S. § 44-1522 and applicable UCC provisions.

49. I do not seek to reinstate the original loan contract, nor may Defendants invoke its terms after knowingly violating it. The agreement is independently void under the Truth in Lending Act (15 U.S.C. §§ 1601–1666), the Arizona Consumer Fraud Act (A.R.S. § 44-1522), and Arizona's usury statute (A.R.S. § 44-1201), having imposed a predatory 26.25% APR without furnishing the required TILA disclosures. Defendants then executed an unlawful repossession and issued facially deficient post-sale notices in violation of A.R.S. §§ 47-9612 and 47-9616, culminating in a coerced settlement extracted under deceptive and unlawful conditions. Having materially breached both agreements, they may enforce neither. Federal law prohibits waiver of consumer rights obtained through coercion, deception, or grossly unequal bargaining power. See 15 U.S.C. § 1640(e), 12 C.F.R. § 1026.1(c), and Restatement (Second) of Contracts §§ 208,

159, and 178. Any attempt to revive the original loan balance or impose liability under either agreement is barred as a matter of law.

50. I did not knowingly or voluntarily waive any rights afforded to me under federal or state law. Any clause in the settlement agreement purporting to waive such rights is void and unenforceable under 15 U.S.C. § 1640(e), 12 C.F.R. § 1026.1(c), and A.R.S. § 44-1522(A). Consumer protection statutes cannot be waived through coercion, deception, material omission, or unequal bargaining power. Any claim that I voluntarily relinquished these rights is factually false, legally defective, and contrary to the settled public policy that prohibits waivers of statutory protections secured for the benefit of consumers.

## D. Improper Tax Reporting and Cobra's Direct Involvement

51. In November 2024, I received an IRS Form 1099-C stating that $5,374.43 had been canceled—yet the issuing party was *not* Exeter Finance LLC, the entity named in the original retail installment contract, repossession notices, or the settlement agreement. Instead, the form was issued by Cobra Equity Holdco LLC, a shadow entity that never disclosed its interest, role, or identity at any point during the transaction. This concealed creditor status constitutes a willful violation of federal disclosure laws and undermines the integrity of the entire transaction. Cobra's covert involvement—culminating in the issuance of a federal tax document—reveals an orchestrated scheme to evade liability, distort regulatory filings, and manipulate tax obligations without ever facing consumer scrutiny. Their failure to identify themselves as a known party during the

20

transaction deprives me of my right to verify, dispute, or obtain meaningful redress, and exposes both Cobra and Exeter to claims of deceptive business practices, fraudulent concealment, and unlawful debt reporting under 15 U.S.C. §§ 1692e, 1692g, and A.R.S. § 44-1522.

52. The form was issued under the name of Cobra Equity Holdco LLC, not Exeter Finance, and used Cobra's federal employer identification number.

53. The issuance of the IRS Form 1099-C by Cobra Equity Holdco LLC—despite Cobra never being identified in the retail installment contract, repossession notices, or settlement documents—creates a material inconsistency that undermines the legitimacy of the claimed deficiency and raises serious concerns regarding the true identity of the creditor. This concealment and subsequent emergence of Cobra constitutes a deceptive business practice and violates the clarity and transparency required under 15 U.S.C. §§ 1692e(10) and 1692g(a), as well as A.R.S. §§ 44-1522 and 47-9601. The omission of Cobra from all prior disclosures misled me as to the nature of the transaction and my legal obligations, and it materially affected my ability to dispute the debt, contest the validity of the deficiency, or understand who held authority over the account.

54. The issuance of a Form 1099-C is not a ministerial act; it constitutes a formal declaration by the creditor that a debt has been cancelled, triggering legal consequences under federal tax law and evidencing an intent to discharge the obligation. By issuing this form, Cobra Equity Holdco LLC represented to the IRS and to me that the underlying debt was no longer owed—an admission with

21

direct legal implications under 26 C.F.R. § 1.6050P-1 and binding consequences under applicable federal law.

55. The Form 1099-C was issued more than a year after the vehicle was repossessed and sold, and nearly a month after I remitted a coerced $650 settlement payment—constituting an unlawful and strategically delayed filing. Under 26 C.F.R. § 1.6050P-1(b)(2)(i)(A), the creditor is required to file a 1099-C upon the occurrence of an "identifiable event," which includes repossession or the expiration of a nonpayment period, not months later after further unlawful collection efforts. The delay violated IRS reporting requirements and artificially distorted the legal record of debt cancellation, raising serious questions of bad faith, concealment, and compliance failure.

56. The issuance of the Form 1099-C under Cobra Equity Holdco LLC's name is a material act that establishes Cobra's direct participation in the control, resolution, and final disposition of my account. This was not a ministerial task or passive oversight function; rather, it reflects Cobra's operational authority over account-level decisions with legal and financial consequences. By executing a federal tax filing that represents cancellation of debt, Cobra affirmatively inserted itself into the transactional chain, including the unlawful repossession, post-sale deficiency claims, and coerced settlement activity. Cobra's role was not limited to ownership—it actively engaged in conduct giving rise to liability under both federal and state law.

57. At no point did Cobra disclaim responsibility for the account, nor was any communication received that identified Exeter Finance as an entirely independent

actor. All post-default activity—including repossession, deficiency collection, and cancellation of debt—culminated in Cobra's direct federal tax reporting. This reinforces Cobra's standing as a controlling party and substantiates its inclusion in these proceedings.

## E. Credit Reporting Misconduct

58. Despite issuing the IRS Form 1099-C in November 2024—an official declaration of debt cancellation—Defendants continued to furnish false, derogatory, and legally inconsistent information to consumer reporting agencies. They failed to update the tradeline to reflect the debt as canceled or settled in full, instead reporting misleading account statuses such as "charge-off," "repossession," or "past due," in direct violation of their obligations under the Fair Credit Reporting Act (FCRA), 15 U.S.C. §§ 1681s-2(a) and (b). This reporting not only contradicted their own tax filings but also misrepresented the legal status of the debt to third parties, causing ongoing reputational and financial harm.

59. Despite the issuance of a 1099-C on November 5, 2024, and the execution of a settlement in October 2024, Defendants have continued to furnish false, incomplete, and derogatory information to consumer reporting agencies in violation of 15 U.S.C. § 1681s-2(a) and (b). As of June 2025, they altered my credit file without notice or consent, reflected contradictory statuses such as "charged off," "in repossession," and "unknown," and reported an outstanding balance despite the account being resolved. These updates were made while this matter was pending and under litigation, without furnishing corrected or complete

data to ensure fair consumer reporting, as required by the Fair Credit Reporting Act (FCRA). Such conduct is retaliatory, deceptive, and unlawful.

60. The credit tradelines furnished by Defendants were not merely inaccurate—they were materially false, incomplete, and misleading in violation of the Fair Credit Reporting Act, specifically 15 U.S.C. § 1681s-2(a)(1)(A), which prohibits the reporting of information known or reasonably believed to be inaccurate. Defendants continued to report the account as charged off, in collection, and repossessed—even after a written settlement and the issuance of an IRS Form 1099-C formally canceling the debt. This conduct misrepresents the legal status of the account and falsely implies an enforceable obligation where none exists, inflicting reputational damage and financial harm. Such reporting is not the product of oversight but a willful, retaliatory act of bad faith in the midst of active litigation, warranting judicial scrutiny and liability under 15 U.S.C. § 1681n(a) for willful noncompliance and § 1681o(a) for negligent noncompliance.

61. I submitted formal disputes to all three major credit bureaus, including Equifax, TransUnion, and Experian, demanding deletion or correction of the materially false tradelines. The most recent dispute was filed in April 2025. Despite this, Defendants accessed my credit report in June 2025 without any permissible purpose, and unilaterally altered negative account data during active litigation— without notifying me in writing, as required by law. This unauthorized activity is retaliatory, prejudicial, and devoid of good faith. It not only undermines my legal standing as a litigant but also constitutes continued willful noncompliance with the Fair Credit Reporting Act, including violations of 15 U.S.C. §§ 1681b,

24

1681i(a)(6), and 1681s-2(b). Their actions reflect an ongoing pattern of obstruction, manipulation, and disregard for federal law while under direct notice of litigation.

62. Despite receiving formal notice of my dispute, Exeter willfully verified the tradeline as accurate, doubling down on data it knew—or should have known—was materially false, incomplete, and misleading. The tradeline continued to reflect a balance owed, a repossession, and a charge-off, despite a settled account and a cancellation of debt via IRS Form 1099-C. Exeter's failure to conduct a reasonable investigation, coupled with its reckless disregard for the truth, constitutes willful noncompliance with 15 U.S.C. §§ 1681s-2(b)(1)(A)–(D). This misconduct caused direct harm to my creditworthiness and forms part of a broader pattern of deceptive and retaliatory conduct while under active litigation.

**F. Retaliation Following Legal Notice**

63. On or about April 24, 2025, I served a formal legal demand letter to both Exeter and Cobra outlining their violations and providing a final opportunity to correct their conduct. **(A true and correct copy of the email demand letter is attached as Exhibit H)**

64. Within 24 hours of receiving that letter, Exeter updated the tradeline with additional negative remarks, including re-flagging it as "in collections" and "potentially negative." **(A true and correct copy of the credit report derogatory remarks are attached as Exhibit G).**

65. Additional derogatory updates were made on or about April 25, 2025, and April 28, 2025—demonstrating that their response to a lawful demand was retaliatory, malicious, and in direct violation of consumer protection laws.

66. Following service of my legal demand on April 24, 2025, Defendants unlawfully accessed my credit reports without my knowledge, consent, or any permissible purpose, in clear violation of 15 U.S.C. § 1681b(f). These post-notice inquiries were conducted while litigation was pending and after Defendants had actual knowledge that I was represented and asserting legal claims. No notice of intent to access, no adverse action letter, and no account-related justification was ever provided. Their actions reflect not routine account maintenance, but targeted retaliatory surveillance executed in bad faith.

67. Defendants' conduct further devolved into a campaign of contradictory and materially misleading reporting. After issuing a 1099-C for canceled debt and accepting a settlement, Defendants continued furnishing inaccurate data across multiple tradeline categories—reporting the account as "charged off," "in repossession," and "in collection" simultaneously, while also assigning unexplained "unknown" statuses. These internal inconsistencies render the tradeline facially unreliable and legally noncompliant under 15 U.S.C. § 1681s-2(a). Moreover, Defendants falsely verified these inaccuracies in response to my April 2025 dispute, violating § 1681s-2(b). Taken together, this pattern of retaliatory credit manipulation reflects a willful abuse of the consumer reporting system in direct response to my protected legal actions.

## G. Resulting Harm and Damages

68. As a direct result of Defendants' continued reporting of false, derogatory, and misleading information, I have been denied vehicle financing on more than thirty (20) separate occasions. Each denial specifically cited the presence of the Exeter tradeline, which was inaccurately reported as "charged off," "in repossession," or "in collection" despite the account having been settled and subsequently subject to a 1099-C cancellation. These rejections caused repeated financial harm, undermined my ability to secure stable transportation, and directly impacted my livelihood and economic security.

69. The vehicle financing denials involved applications for automobiles ranging in price from approximately $28,000 to $45,000, including but not limited to Mazda and Lexus models. These were not speculative inquiries but bona fide financing efforts, made in reliance on my then-current financial position and with full intent to purchase. Each denial further compounded the harm caused by Defendants' unlawful credit reporting practices and deprived me of access to reliable transportation necessary for work and daily life.

70. As a direct and foreseeable result of Defendants' continued furnishing of inaccurate and derogatory credit information, I lost access to over $500,000 in cumulative vehicle financing opportunities. These denials were not abstract or hypothetical; they reflect real and quantifiable economic losses tied to specific, time-sensitive applications. The resulting damage to my creditworthiness, purchasing power, and professional reliability is substantial and ongoing.

71. As a direct and proximate result of the repeated financing denials caused by Defendants' inaccurate credit reporting, I have been forced to rent a vehicle continuously since November 2024. I initially incurred rental costs of $100 per day and, beginning in January 2025, have been paying $429 per week. These out-of-pocket expenses were reasonably foreseeable, substantial, and directly attributable to Defendants' unlawful conduct.

72. To date, I have incurred more than $15,000 in vehicle rental expenses as a direct consequence of Defendants' conduct. In addition to this substantial financial burden, I continue to suffer ongoing emotional distress, reputational harm, and material financial instability—each of which stems from Defendants' persistent and unlawful furnishing of false credit information and failure to correct it despite notice and opportunity.

73. I received multiple written confirmations from auto dealers indicating that financing was denied explicitly due to the derogatory reporting on my Exeter account. These messages, obtained from several independent dealers, confirmed that no lender would approve my applications due to the presence of a reported repossession and charge-off. (True and correct copies of these text messages are attached as **Exhibit J**.) This evidence establishes a direct and ongoing harm traceable to Defendants' conduct.

74. These ongoing injuries—economic, reputational, and emotional—were directly and proximately caused by Defendants' unlawful, willful, and malicious conduct. Their actions have resulted in measurable financial loss, substantial hardship, and sustained harm to my creditworthiness. Absent immediate and decisive court

intervention, these injuries are likely to persist and escalate, causing further irreparable damage.

75. **Reservation of Rights**

Plaintiff expressly reserves the right to amend this Complaint to include additional factual allegations, legal claims, or parties as discovery reveals further evidence of misconduct, misrepresentation, or coordinated wrongdoing by Defendants Exeter Finance LLC, Cobra Equity Holdco LLC, or any affiliated third parties involved in credit reporting, repossession, debt collection, tax reporting, or post-settlement conduct. All allegations herein are made to the best of Plaintiff's knowledge and belief, based on currently available information, and are submitted in good faith pursuant to Rule 11 of the Federal Rules of Civil Procedure. Plaintiff further reserves the right to supplement this Complaint with relevant exhibits, declarations, and documentary evidence as appropriate, including in opposition to any dispositive motion or in connection with discovery or evidentiary proceedings.

## H. DEFENDANTS RECEIVED LEGAL NOTICE AND IGNORED PLAINTIFF'S WARNINGS

76. On April 24, 2025, I served Exeter Finance LLC with a formal legal demand letter via certified mail and email. The letter outlined serious and ongoing violations of federal and state law, including—but not limited to—furnishing false credit

information, pursuing an unlawful deficiency balance, and breaching the terms of a written settlement agreement. The demand expressly provided Exeter with a final opportunity to cure its violations without litigation. Despite receiving actual and constructive notice, Exeter willfully ignored the warnings, electing instead to continue its unlawful conduct. Their silence and inaction speak to a pattern of knowing disregard for consumer rights and regulatory compliance.

77. Rather than respond in good faith to the April 24, 2025 demand letter, Exeter escalated its misconduct by willfully accessing my credit reports and publishing new derogatory remarks. These retaliatory actions were not only unjustified— they occurred while my complaint was pending and after formal notice of litigation had been provided. Exeter's conduct reflects a deliberate disregard for the law and a knowing attempt to punish me for asserting my rights. This escalation, executed under the shadow of pending legal claims, constitutes bad faith, willful noncompliance, and further violations of the Fair Credit Reporting Act and Arizona consumer protection statutes.

78. In response, I issued a second legal notice on April 29, 2025, styled as a final 48-hour demand letter. This notice reiterated the factual and legal violations previously identified and provided Exeter Finance LLC with a final opportunity to cure its misconduct. The letter made clear that failure to take immediate corrective action would result in the commencement of formal litigation. Despite this, Exeter failed to respond or remediate the unlawful conduct, further evidencing its willful disregard for statutory compliance and good faith resolution.

79. Exeter failed to respond within the 48-hour window and instead waited until May 5, 2025—six days after receipt of my final demand—to issue a vague, non-substantive acknowledgment email from its "Office of the President." The correspondence included generic language stating that Exeter "takes these matters seriously," but failed to address or correct any of the legal violations raised. I promptly replied to the acknowledgment, reiterating my concerns, yet have received no further communication or substantive resolution from Exeter. This pattern of delay and obfuscation further demonstrates Defendants' bad faith and disregard for legal compliance. A true and correct copy of the May 5 acknowledgment email is attached hereto as **Exhibit F.**

80. The belated May 5 email did not constitute a substantive response to the specific legal violations detailed in my prior notices. Instead, it employed vague, noncommittal language typical of routine customer service communications—seemingly intended to create the appearance of responsiveness while evading liability. Exeter's failure to directly address the legal claims, despite being placed on unequivocal notice, reflects a deliberate and willful pattern of noncompliance, further evidencing a willful pattern of noncompliance.

81. On April 26, 2025, I filed a formal complaint with the Consumer Financial Protection Bureau (CFPB) against Exeter Finance LLC, detailing the same misconduct outlined in my prior legal notices—including post-settlement credit defamation, breach of contract, and unlawful debt collection. In its May 16, 2025 response, Exeter did not dispute the issuance of the 1099-C or the existence of the signed settlement agreement, nor did it offer any factual rebuttal to the

allegations. Instead, it acknowledged the litigation and declined to engage substantively, asserting that the matter would proceed solely through judicial channels. This deliberate avoidance underscores Exeter's awareness of liability and calculated refusal to remediate harm without judicial compulsion. A true and correct copy of the CFPB complaint and response is attached as **Exhibit K**.

82. This series of ignored legal notices, retaliatory conduct, and superficial outreach reflects a pattern of disregard for my rights under federal and Arizona law. Defendants were placed on clear notice of their actions, given an opportunity to correct them, and instead chose to escalate. Their conduct was not accidental—it was deliberate, repeated, and harmful. These facts demonstrate a pattern of willful behavior that resulted in ongoing injury and justify consideration of punitive damages during adjudication.

83. Cobra Equity Holdco LLC was not directly served because its role was deliberately concealed—it did not appear on my credit reports, billing statements, post-sale disclosures, or any consumer-facing documentation. This omission was not incidental; it was a calculated effort to shield Cobra from scrutiny while it directed and benefited from the unlawful conduct at issue. Cobra was not a passive parent company—it was the architect and ultimate beneficiary of key decisions, including debt cancellation, IRS reporting, and continued post-settlement account manipulation. Its deliberate concealment and failure to disclose its role do not absolve liability—they establish it. Cobra's orchestrated silence forms part of a broader scheme to evade regulatory oversight while participating in deceptive, retaliatory, and unlawful practices actionable under

federal and state law. Cobra's pattern of concealment is not only indicative of corporate bad faith—it is consistent with a calculated strategy to insulate itself from liability while reaping the benefits of predatory lending, unlawful debt collection, and retaliatory credit interference

84. Defendant materially breached the October 29, 2024 settlement agreement by continuing to furnish inaccurate and derogatory credit information, misrepresenting the account status post-settlement, and issuing a misleading IRS Form 1099-C. However, should the Court determine that no contractual breach occurred, Plaintiff pleads in the alternative that Defendant's conduct constitutes actionable fraud, violations of the Arizona Consumer Fraud Act (A.R.S. § 44-1522), and willful furnishing of false information to consumer reporting agencies in violation of the Fair Credit Reporting Act (15 U.S.C. § 1681s-2(b)). These theories independently support liability and damages.

## V. CAUSES OF ACTION

The following causes of action are asserted pursuant to the facts, evidence, and legal theories set forth above. Each count incorporates by reference all prior paragraphs of this Complaint as if fully stated herein and is supported by applicable statutory, regulatory, and common law authority.

**COUNT I – VIOLATION OF THE FAIR CREDIT REPORTING ACT (FCRA)**

(15 U.S.C. §§ 1681e(b), 1681i, 1681s-2(b))

Against: Exeter Finance LLC and Cobra Equity Holdco LLC

85. Plaintiff incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein, including all factual allegations, legal assertions, and exhibits. These allegations establish a pattern of knowing and willful noncompliance with the Fair Credit Reporting Act (15 U.S.C. §§ 1681 et seq.) by both Exeter Finance LLC and Cobra Equity Holdco LLC.

86. Defendant Exeter Finance LLC is a "furnisher of information" under the Fair Credit Reporting Act and regularly reports tradeline data to one or more consumer reporting agencies. Although Defendant Cobra Equity Holdco LLC does not appear as a direct furnisher on my credit report, Cobra exercises ownership and control over Exeter and played a key role in directing or authorizing the transmission of false or incomplete credit data. Cobra is therefore liable as a co-actor or under a theory of vicarious liability.

87. Defendants furnished materially false, misleading, and incomplete credit information to all three major consumer reporting agencies—Experian, Equifax, and TransUnion—including that my account remained "in collections," was "charged off," and involved a "repossession," even after a binding written settlement agreement had been executed and satisfied in full, and a Form 1099-C

34

was issued. This reporting was not only factually inaccurate, but also contradicted the legal effect of the settlement and cancellation of debt.

88. Cobra Equity Holdco LLC's issuance of the IRS Form 1099-C constituted a formal and affirmative declaration of debt cancellation under federal tax law, evidencing that the account obligation had been discharged. This act triggered a legal duty to ensure corresponding credit reporting was accurate and complete. Despite this, neither Cobra nor Exeter took any steps to update or correct the tradeline, knowingly allowing materially false and derogatory information to persist. This omission reflects a reckless disregard for statutory compliance and consumer rights.

89. In February and March 2025, I submitted formal written disputes to Experian, Equifax, and TransUnion pursuant to 15 U.S.C. § 1681i, disputing the false, misleading, and outdated information being reported by Defendants. These disputes specifically identified the tradeline inaccuracies, including the continued reporting of a charged-off balance, repossession, and collection status despite the settlement and debt cancellation.

90. After receiving notice of my formal disputes from the consumer reporting agencies, Defendant Exeter Finance LLC failed to conduct a reasonable investigation and willfully verified the inaccurate tradeline as accurate, in violation of its reinvestigation obligations under 15 U.S.C. § 1681s-2(b). Exeter's refusal to correct or delete the derogatory information—despite clear evidence of a paid settlement and debt cancellation—constitutes reckless disregard for its statutory duties and consumer rights.

91. Defendants failed to follow reasonable procedures to assure the maximum possible accuracy of the information furnished to consumer reporting agencies, as mandated by 15 U.S.C. § 1681e(b). Additionally, upon receiving notice of disputed information, Defendants failed to conduct a good-faith reinvestigation under 15 U.S.C. § 1681i, instead allowing materially false, outdated, and misleading information to persist on my credit reports in knowing violation of their statutory obligations.

92. As a direct and foreseeable result of Defendants' continued false and derogatory credit reporting, I was denied vehicle financing on more than twenty occasions for vehicles priced between $28,000 and $45,000. These denials caused the loss of over $500,000 in cumulative financing opportunities and deprived me of reliable transportation, despite my qualifications but for the inaccurate tradeline Defendants unlawfully maintained.

93. As a result of being repeatedly denied financing due to the false tradeline, I was forced to rent a vehicle as a substitute for ownership, incurring over $15,000 in rental expenses from November 2024 to the present. In addition to financial hardship, I have endured significant emotional distress, anxiety, humiliation, and reputational harm caused by Defendants' continued publication of materially false credit information, which portrayed me as delinquent and financially irresponsible despite full settlement and debt cancellation.

94. Defendants' conduct was willful, knowing, and carried out in reckless disregard of their duties under the Fair Credit Reporting Act. Despite having actual notice of the inaccurate reporting and multiple opportunities to correct it, they persisted

36

in disseminating false information. Their refusal to act in good faith or adhere to statutory obligations entitles me to recover actual damages, statutory damages, punitive damages, and reasonable attorneys' fees and costs under 15 U.S.C. §§ 1681n and 1681o.

## COUNT II – VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT (FDCPA)

(15 U.S.C. §§ 1692e, 1692f)

Against: Exeter Finance LLC

95. Plaintiff hereby incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein, including all factual allegations, legal theories, and evidence establishing Defendant's unlawful conduct. This cause of action is asserted against Exeter Finance LLC in its capacity as a "debt collector" under the Fair Debt Collection Practices Act.

96. Defendant Exeter Finance LLC qualifies as a "debt collector" within the meaning of 15 U.S.C. § 1692a(6) because it actively pursued collection efforts on a purported balance **after** the vehicle had already been repossessed and the underlying contract was no longer executory. On October 11, 2024, just days before executing a written settlement agreement, Exeter sent a debt collection email explicitly stating: **"This communication is an attempt by Exeter Finance**

**LLC to collect a debt, and any information received in response to this communication will be used for that purpose.**" This was not a passive notice—it was a calculated, deliberate attempt to collect on a disputed account during a critical window of pre-settlement negotiation. At the time of this communication, Exeter had already repossessed and sold the vehicle, yet it continued to press for payment using coercive language while the dispute remained unresolved. This conduct constitutes **post-repossession debt collection activity**, and is squarely within the scope of the FDCPA's regulatory framework. The October 11 communication alone satisfies the statutory threshold of a collection attempt under federal law.

*(A true and correct copy of the debt collection email is attached as **Exhibit L**.)*

97. After repossessing and selling my vehicle, Exeter attempted to collect an alleged deficiency balance of $8,599.72 from me.

98. Exeter Finance LLC's post-settlement collection letter and subsequent communications willfully misrepresented the amount, character, and legal status of the alleged debt, in direct violation of 15 U.S.C. § 1692e. Despite executing a binding settlement agreement and reporting the account as "paid in settlement" with a $12,218 write-off, Exeter continued to communicate as though a balance remained owed. The communications deliberately omitted material facts about the account's resolved status, thereby misleading the me and falsely implying that legal action or further derogatory reporting could follow.

99. Exeter Finance LLC's collection efforts failed to disclose that it had not complied with the mandatory notice provisions of Arizona's Uniform Commercial Code,

specifically A.R.S. §§ 47-9612 and 47-9616. Exeter repossessed and sold the collateral without issuing the legally required pre-sale and post-sale notices to me, thereby forfeiting any legal entitlement to pursue a deficiency. This omission is not merely a technical defect—it is a substantive violation of Arizona law that nullifies the legitimacy of Exeter's deficiency claim and renders any related collection activity unlawful.

100.    Moreover, the deficiency demand willfully omitted a legally required itemization of the sale, including a breakdown of sale proceeds, expenses, and application of funds. Exeter concealed the time, method, and terms of the sale—critical disclosures necessary to determine whether the disposition of the collateral was commercially reasonable. This deliberate withholding of material facts further violated Arizona's UCC provisions and demonstrates a calculated effort to mislead, intimidate, and extract payment on a debt Exeter had no lawful authority to collect.

101.    Exeter used these omissions and misrepresentations to pressure me into paying $650 under a purported "settlement," despite knowing it lacked a valid legal basis to enforce any balance.

102.    Exeter's conduct—including the misstatement of the debt's validity, omission of required disclosures, and pursuit of a deficiency it had no lawful right to collect—constitutes the use of false, deceptive, and misleading representations in violation of 15 U.S.C. § 1692e(2)(A), (5), and (10). Additionally, Exeter's actions represent an unfair and unconscionable means to collect a debt in violation of 15 U.S.C. § 1692f. These were not isolated oversights, but deliberate acts

executed with the intent to coerce payment through fear, confusion, and concealment of the truth.

103.     Defendant Exeter Finance LLC further violated 15 U.S.C. § 1692f by continuing to furnish derogatory credit information to consumer reporting agencies after accepting full and final settlement payment of $650 and after Cobra Equity Holdco LLC issued a Form 1099-C, formally cancelling the debt under federal law. The continued reporting of charge-off, repossession, and collections tradelines after the debt was discharged constitutes an unfair and unconscionable means to collect a debt, and was done in reckless disregard of statutory obligations.

104.     As a direct and proximate result of Defendant Exeter Finance LLC's violations of the Fair Debt Collection Practices Act, I sustained actual damages, including but not limited to economic harm, adverse credit impacts, loss of vehicle financing opportunities, reputational damage, and emotional distress. These damages were the foreseeable and natural consequence of Exeter's unlawful collection practices and false credit reporting.

105.     I am entitled to actual damages, statutory damages, and reasonable attorneys' fees and costs pursuant to 15 U.S.C. § 1692k.

## COUNT III – VIOLATION OF ARIZONA UNIFORM COMMERCIAL CODE

(A.R.S. §§ 47-9612, 9613, 9616, 9626)

Against: Exeter Finance LLC

106.    I incorporate by reference all preceding paragraphs of this Complaint as if fully set forth herein.

107.    Exeter Finance LLC repossessed my vehicle in or around October 2023 and became obligated under Arizona's Uniform Commercial Code to provide timely, accurate, and complete post-repossession notices in compliance with A.R.S. §§ 47-9612 and 9616.

108.    Exeter issued a post-repossession "Notice of Intent to Sell" and a subsequent "Deficiency Letter," but neither satisfied the statutory requirements for lawful enforcement of a deficiency under Arizona's Uniform Commercial Code.

109.    The notices failed to include material disclosures required under A.R.S. § 47-9612, including but not limited to:

- The date and method of the sale;

- Whether the sale was public or private;

- A clear description of the calculation of any remaining balance;

- An itemized breakdown of sale proceeds and offsets;

41

- A meaningful explanation of how the sale complied with commercial reasonableness standards.

110.  A.R.S. § 47-9616 requires that the secured party apply sale proceeds properly and provide a full post-sale accounting—Exeter failed to do so.

111.  As a direct consequence of these statutory violations, Exeter Finance LLC has forfeited any right to collect a deficiency under A.R.S. § 47-9626(A)(3), which expressly bars a secured party from recovering a deficiency when it fails to provide legally sufficient notice as required by law. Exeter's defective notices are not minor procedural missteps—they are fatal omissions that invalidate any claim to additional payment.

112.  Despite this forfeiture, Exeter demanded $8,599.72 from me and continued to report that balance as valid on my credit reports.

113.  I later executed a $650 settlement agreement under coercive circumstances—while still unaware that Exeter had failed to satisfy the statutory prerequisites mandated by Arizona's Uniform Commercial Code. This purported "settlement" was procured in violation of A.R.S. §§ 47-9612 and 9616 and is therefore legally infirm. By failing to issue compliant notices and conceal material sale details, Exeter rendered the deficiency claim—and any resolution arising from it—void or voidable as a matter of law.

114.  Exeter's deliberate failure to comply with Arizona's Uniform Commercial Code stripped me of critical statutory rights, including the ability to contest the alleged deficiency, evaluate the validity and commercial reasonableness of the sale, and pursue a surplus or damages remedy under A.R.S.

42

§§ 47-9613 and 9626. By withholding required disclosures, Exeter obstructed my access to due process and engaged in a legally defective enforcement scheme that nullifies any claimed entitlement to further payment.

115.    As a direct and proximate result of Exeter's willful noncompliance with Arizona's Uniform Commercial Code, I sustained quantifiable economic harm, sustained long-lasting damage to my creditworthiness, and was coerced—under defective legal pretenses—into making a payment that Exeter had no lawful right to demand. This demand was predicated on notices that failed to satisfy statutory requirements, rendering the alleged deficiency unenforceable and the settlement void of legal legitimacy.

116.    I seek full restitution of the coerced payment, rescission of the purported settlement agreement, actual and consequential damages, and declaratory relief invalidating any claim to a deficiency balance. This request for rescission is not an admission or concession of liability, nor does it revive any alleged debt. I assert that the deficiency balance was void and uncollectible as a matter of law under A.R.S. § 47-9626(A)(3) due to Exeter's statutory noncompliance. I further request all other remedies available at law or in equity, including statutory relief under Arizona's Uniform Commercial Code.

117.    I suffered concrete and measurable financial harm, including the coerced payment of $650 toward a debt that was legally extinguished, adverse credit reporting that materially impacted my credit profile, and repeated denials of financing offers. These injuries are the direct result of Exeter's unlawful assertion and collection of a deficiency it had no legal right to pursue under Arizona law.

## COUNT IV – BREACH OF CONTRACT AND FRAUDULENT INDUCEMENT

(Common Law Claims – Arizona)

Against: Exeter Finance LLC

118.     I incorporate by reference all preceding paragraphs of this Complaint as if fully set forth herein.

119.     Exeter Finance LLC claimed that I owed a deficiency balance of $8,599.72 following the repossession and sale of my vehicle, despite its failure to comply with the post-repossession and notice requirements set forth in A.R.S. §§ 47-9612 and 9616.

120.     Under Arizona law, Exeter's failure to provide sufficient statutory notice forfeited its right to pursue a deficiency balance. A.R.S. § 47-9626(A)(3) makes clear that a secured party that fails to comply with these provisions "may not collect a deficiency."

121.     In October 2024, I entered into a written settlement agreement with Exeter in which I agreed to pay $650 in full resolution of the alleged deficiency balance.

122.     At the time the agreement was executed, Exeter failed to disclose that it had no legal right to collect the underlying balance due to its own statutory noncompliance.

123.     Exeter Finance LLC knowingly misrepresented the legal enforceability of the alleged deficiency balance and induced me to enter into the so-called

"settlement agreement" through material omissions and false representations of law and fact. At no time did Exeter disclose that its statutory noncompliance with A.R.S. §§ 47-9612 and 9616 had extinguished any lawful right to collect a deficiency. This concealment deprived me of informed consent and constitutes fraudulent inducement under Arizona common law.

124.    These material misrepresentations and omissions constitute fraudulent inducement under Arizona law. I was intentionally led to believe that the alleged deficiency balance was legally enforceable when, in truth, it was void by operation of law due to Exeter's failure to comply with mandatory statutory prerequisites. This deception nullifies the validity of the settlement and gives rise to independent tort liability.

125.    I reasonably and detrimentally relied on Exeter's false representations and omissions, believing in good faith that I was resolving a valid and enforceable legal obligation. This reliance directly resulted in my payment of $650 under false pretenses, causing me measurable financial harm and satisfying the reliance element of fraudulent inducement.

126.    Exeter's conduct constitutes a breach of the covenant of good faith and fair dealing implied in all contracts under Arizona law. By entering into a settlement agreement while knowingly concealing material legal deficiencies and acting in bad faith, Exeter deprived me of the benefit of the bargain and violated fundamental principles of contractual fairness.

127.    As a direct and proximate result of Exeter's breach and fraudulent inducement, I suffered concrete financial harm, reputational injury, and

45

substantial credit impairment. These damages include the loss of $650 paid under false legal pretenses, as well as continued denial of financing opportunities due to an unlawfully reported tradeline that Exeter failed to correct.

128.     I respectfully seek rescission of the settlement agreement, full restitution of the $650 payment, compensatory damages, and all other relief the Court deems just and proper under law and equity.

129.     For clarity, my request to rescind the settlement agreement does not constitute an acknowledgment of liability or revive any purported deficiency balance. To the contrary, I maintain that no deficiency was legally owed due to Exeter's statutory noncompliance under Arizona's Uniform Commercial Code, and that any such balance was extinguished by operation of law prior to the parties' agreement. The rescission I seek is grounded solely in fraudulent inducement and Exeter's breach of statutory and contractual obligations—not a concession that the underlying debt was ever enforceable.

**Count V – Violation of the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681s-2(b): Failure to Conduct a Reasonable Investigation After Notice of Dispute**

Against: Exeter Finance LLC and Cobra Equity Holdco LLC

130.     I incorporate all preceding paragraphs by reference as though fully set forth herein.

131.    In February, March, and April 2025, I submitted formal written disputes to Experian, Equifax, and TransUnion regarding the tradeline reported by Exeter Finance LLC. These disputes identified specific inaccuracies in the reporting and triggered Defendants' obligations under 15 U.S.C. § 1681s-2(b) to conduct a reasonable investigation and to correct or delete any inaccurate or incomplete information.

132.    Upon receipt of notice from the consumer reporting agencies regarding my formal disputes, Defendants Exeter Finance LLC and Cobra Equity Holdco LLC became statutorily obligated under 15 U.S.C. § 1681s-2(b) to conduct a lawful and reasonable investigation, determine the accuracy and completeness of the disputed tradeline, and report all necessary corrections or deletions to the consumer reporting agencies. Despite this clear legal duty, both Defendants willfully failed to initiate or complete a meaningful reinvestigation, thereby perpetuating the dissemination of materially false information in violation of federal law.

133.    My dispute included a fully executed General Release and Settlement Agreement dated October 2024, in which Exeter Finance LLC agreed to accept $650 as full satisfaction of the alleged debt. Additionally, I submitted a Form 1099-C issued by Cobra Equity Holdco LLC—the parent entity of Exeter—formally declaring the debt canceled under federal tax law. These documents unequivocally established that no balance remained legally due and that the tradeline was inaccurate, misleading, and subject to deletion or immediate correction under the Fair Credit Reporting Act.

134.    Despite receiving clear documentary evidence invalidating the alleged debt, Exeter Finance LLC willfully verified the derogatory tradeline as "accurate" and took no corrective action to amend, delete, or suppress the false credit information. Cobra Equity Holdco LLC—having issued the Form 1099-C and exercised ultimate authority over the account—knowingly permitted its subsidiary to continue furnishing materially false data to consumer reporting agencies, thereby ratifying and participating in the ongoing violation of federal law.

135.    This conduct constitutes a direct violation of 15 U.S.C. § 1681s-2(b)(1)(A)–(E), which imposes a clear statutory duty on furnishers of credit information to conduct a reasonable investigation upon receipt of a consumer dispute, correct any inaccuracies found, and report the results to all relevant consumer reporting agencies. Defendants' failure to comply with these mandated procedures reflects a knowing disregard of federal law and a systemic failure to maintain accurate credit reporting.

136.    As a direct and foreseeable result of Defendants' willful failure to correct the inaccurate tradeline, I received numerous adverse action notices from lenders denying me vehicle financing between November 2024 through May 2025. While each notice used different wording—such as but not limited to "charge-off," "repossession," or "delinquent auto loan"—all denials are attributable to the Exeter Finance tradeline, which was the only account on my credit reports involving a vehicle, repossession, or alleged deficiency during the relevant period. The inaccurate reporting of this tradeline materially impaired my ability to secure transportation, causing documented financial and reputational harm. A sample of

these denials is attached as **Exhibit E**. Each denial cited "serious delinquency," "charge-off," or "collection," all traceable to the Exeter account.

137.     As a direct and proximate result of Defendants' willful and/or negligent violations of the Fair Credit Reporting Act, I sustained concrete and measurable damages, including but not limited to: denial of vehicle financing, over $15,000 in rental vehicle expenses, reputational harm, diminished creditworthiness, and severe emotional distress. These injuries are the foreseeable consequence of Defendants' failure to conduct a reasonable investigation and to correct false and materially misleading information furnished to consumer reporting agencies.

138.     Pursuant to 15 U.S.C. §§ 1681n and 1681o, I am entitled to recover actual damages, statutory damages, punitive damages for willful noncompliance, and the reasonable value of attorney-equivalent fees and costs incurred in pursuing this action.

**Count VI– Violation of the Arizona Consumer Fraud Act (A.R.S. § 44-1522)**

Against: Exeter Finance LLC and Cobra Equity Holdco LLC

139.     I incorporate all preceding paragraphs by reference as though fully set forth herein.

140.     The Arizona Consumer Fraud Act prohibits any deception, fraud, false pretense, false promise, misrepresentation, or concealment of material facts in

connection with the sale or advertisement of merchandise or services, including consumer credit, vehicle financing, and debt collection. A.R.S. § 44-1522(A).

141.      Defendants Exeter Finance LLC and Cobra Equity Holdco LLC jointly and severally engaged in deceptive, misleading, and materially false conduct in connection with their servicing, credit reporting, and post-repossession collection efforts related to a purported deficiency balance. This included misrepresenting the enforceability of the alleged debt, concealing the legal consequences of their UCC noncompliance, furnishing inaccurate information to consumer reporting agencies, and issuing misleading collection communications—all designed to induce payment from me under false legal pretenses.

142.      Exeter Finance LLC issued a deficiency demand falsely asserting that I owed $8,599.72, despite having failed to comply with the mandatory notice and sale requirements of Arizona's Uniform Commercial Code, including A.R.S. §§ 47-9612 and 47-9616. Under A.R.S. § 47-9626(A)(3), such noncompliance bars the recovery of any deficiency. By asserting a balance that was legally extinguished, Exeter materially misrepresented both the existence and enforceability of the alleged debt in violation of the Arizona Consumer Fraud ActNeither Exeter nor Cobra disclosed in their communications that they were legally barred from pursuing the deficiency, nor did they provide the proper accounting required by law. This omission of material facts rendered their collection letters and settlement offer misleading and deceptive.

143.      I reasonably relied on the legitimacy of Defendants' representations when I paid $650 under the belief that I was resolving a valid, legally enforceable debt.

This payment was procured through the concealment of material facts and affirmative misrepresentations concerning their statutory compliance and legal entitlement to collect a deficiency. Such conduct constitutes consumer fraud under A.R.S. § 44-1522.

144. Cobra's issuance of the Form 1099-C, while simultaneously permitting Exeter to continue derogatory credit reporting and collection activity, materially misrepresented the legal status of the account. This conduct falsely implied that the debt remained enforceable despite its cancellation for federal tax purposes, thereby creating a misleading appearance of ongoing liability.

145. The coordinated actions of Exeter and Cobra reflect a deliberate scheme to mislead consumers, obscure the legal effect of debt cancellation, and capitalize on the inherent imbalance of legal and financial knowledge between creditor and consumer. This deception was designed to pressure payment from consumers who were no longer legally obligated to pay.

146. As a direct and proximate result of Defendants' deceptive conduct, I suffered financial loss, reputational harm, and was denied access to necessary vehicle financing due to the continuation of a false tradeline.

147. I seek all available remedies under the Arizona Consumer Fraud Act, including **actual damages, rescission, restitution of my settlement payment, statutory penalties,** and **treble damages pursuant to A.R.S. § 44-1531(B)** due to the willful and intentional nature of Defendants' misconduct. Defendants knowingly misrepresented the legal status of the account, concealed

their ineligibility to collect a deficiency, and permitted continued derogatory credit reporting and IRS tax misstatements in bad faith.

148.    I plead this claim in the alternative to my breach of contract and fraudulent inducement claims pursuant to Rule 8(d) of the Arizona Rules of Civil Procedure. This ensures that relief under the Arizona Consumer Fraud Act remains available even if the Court determines that the October 29, 2024, settlement agreement is enforceable or does not constitute a breach. This alternative pleading is necessary to preserve all available remedies for the deceptive and unfair conduct perpetrated by Defendants.

**Count VII – Unjust Enrichment and Equitable Restitution**

Against: Exeter Finance LLC and Cobra Equity Holdco LLC

149.    I incorporate all preceding paragraphs by reference as though fully set forth herein.

150.    Over the course of the loan, I paid Exeter Finance LLC a total of **$19,905.89** on a principal balance of **$13,967.24**, pursuant to a retail installment contract dated July 25, 2020.

151.    Exeter repossessed my vehicle and disposed of it by sale without providing the legally required post-repossession notices or disclosures under

A.R.S. §§ 47-9612 and 9616. As a result, Exeter forfeited its right to collect a deficiency under A.R.S. § 47-9626(A)(3).

152.    Despite this forfeiture, Exeter demanded an additional **$8,599.72** as an alleged deficiency. I subsequently paid **$650** in settlement of this amount under coercive and deceptive circumstances created by Defendants' concealment of the legal invalidity of the balance.

153.    Cobra Equity Holdco LLC, as the parent entity and issuer of the Form 1099-C, affirmatively declared the debt canceled for tax purposes, yet knowingly permitted and/or directed continued collection efforts and derogatory credit reporting on the same account through its subsidiary, Exeter Finance LLC. This conduct contradicts the legal effect of debt cancellation and constitutes an unjust retention of benefits derived from a voided obligation.

154.    Exeter retained over $19,000 in loan payments, repossessed and liquidated the vehicle without complying with the statutory prerequisites for seeking a deficiency, and subsequently extracted an additional $650 through a coercive and unlawful settlement. Cobra Equity Holdco LLC, as Exeter's parent entity, oversaw, ratified, and directly benefited from this course of conduct, resulting in unjust enrichment to both Defendants at my expense.

155.    No valid contract, statute, or equitable doctrine authorizes a creditor to retain nearly the full principal, repossess and liquidate the collateral without compliance with statutory procedures, demand further payment under false pretenses, and issue a 1099-C canceling the debt for tax purposes—while simultaneously continuing to collect and report the account in a manner that

causes ongoing financial and reputational harm to the consumer. Such conduct offends basic principles of equity and constitutes a textbook case of unjust enrichment.

156.    I seek equitable restitution of a fair portion of the $19,905.89 in loan payments and the $650 settlement amount, in an amount the Court deems just and appropriate based on Defendants' statutory violations, material misrepresentations, and failure to provide lawful consideration. Defendants repossessed the collateral, retained the proceeds from its sale, accepted a post-cancellation settlement payment, and continued furnishing derogatory credit information. These actions resulted in unjust enrichment and ongoing harm, warranting restitution proportionate to the benefits unjustly retained.

**Count VIII – Misuse of IRS Reporting Instruments and 1099-C Misrepresentation**

Against: Cobra Equity Holdco LLC and Exeter Finance LLC

157.    I incorporate all preceding paragraphs by reference as though fully set forth herein.

158.    On or about November 2024, Cobra Equity Holdco LLC issued an IRS Form 1099-C identifying cancellation of debt in connection with the alleged deficiency balance owed to its subsidiary, Exeter Finance LLC. This form was

submitted to the Internal Revenue Service and furnished to me, signifying, under federal tax law, that the debt had been canceled or discharged as of that date.

159.     The issuance of a Form 1099-C is a legally consequential act under federal tax law. It signifies that the creditor has canceled or discharged a debt of $600 or more, triggering potential tax liability for the consumer and reflecting the creditor's intent to treat the account as closed for collection purposes.

160.     Notwithstanding the issuance of the 1099-C, Cobra and Exeter continued to treat the alleged debt as active and enforceable by maintaining derogatory credit reporting, verifying the tradeline as accurate in response to formal disputes, and failing to acknowledge the discharge reflected in their own IRS filing.

161.     The issuance of a Form 1099-C is a legally significant act under federal tax law, governed by 26 U.S.C. § 6050P. It represents that the creditor has canceled a debt of $600 or more and may trigger taxable consequences for the consumer. IRS Publication 4681 (2023), at page 2, clearly states: *"If a debt is canceled, the creditor cannot continue collection activity on the discharged amount."* Despite issuing a 1099-C for the Exeter account in or around November 2024, Defendants continued to report the account as derogatory and made no effort to modify, correct, or delete the tradeline. This dual behavior — issuing a legally binding document stating that the debt was canceled, while simultaneously maintaining collection activity and negative credit reporting — constitutes a material misrepresentation and violates both federal and state law. It is a false representation of the legal status of the debt in violation of 15 U.S.C. § 1692e(2)(A) of the Fair Debt Collection Practices Act, an unfair practice under §

1692f, and furnishes inaccurate information in violation of 15 U.S.C. § 1681s-2(b) of the Fair Credit Reporting Act.

162.    Federal courts and the IRS have recognized that the issuance of a Form 1099-C generally indicates a discharge of indebtedness and a cessation of collection efforts. In *In re Zilberman*, 603 B.R. 424, 431 (Bankr. E.D.N.Y. 2019), the court held that "[a] creditor who files a 1099-C has effectively acknowledged that it has discharged the debt." Similarly, in *Capcall, LLC v. Foster*, No. 2017CA00033, 2017 WL 4849751, at *3 (Ohio Ct. App. Oct. 23, 2017), the court found that "issuance of a 1099-C is a strong indication the creditor intended to discharge the debt." The IRS also instructs, per Information Letter 2016-0084 and Publication 4681, that creditors who file Form 1099-C should cease collection unless the filing was made in error — which must be corrected. Cobra's filing of a 1099-C, without any such correction or revocation, legally affirmed that the debt was canceled. By continuing derogatory reporting and enforcement actions, Defendants acted in direct contradiction of federal regulatory expectations and judicial interpretation, causing ongoing harm through misrepresentation and abuse of IRS reporting instruments.

163.    Defendants' contradictory conduct caused me concrete and multifaceted harm:

(a) I became potentially liable for income tax on a debt that Defendants simultaneously continued to treat as collectible;

(b) I was repeatedly denied access to vehicle financing as a result of the ongoing

derogatory tradeline; and

(c) I received no practical benefit from the so-called cancellation while Defendants retained both financial gain and reputational leverage.

164.    The Form 1099-C was issued under the name of Cobra Equity Holdco LLC—not Exeter Finance LLC—and reported a cancellation of debt that directly contradicted the tradeline information being actively furnished to Experian, Equifax, and TransUnion.

165.    The use of the Form 1099-C in this manner was materially deceptive and misleading. It functioned not as a bona fide cancellation of debt but as a strategic device to evade liability while Defendants continued to collect, report, and profit from the same account. This conduct constitutes fraudulent misrepresentation and misuse of federal tax reporting instruments.

166.    I seek declaratory relief that the 1099-C constitutes a legal admission of cancellation; a permanent injunction prohibiting Defendants from any further collection, credit reporting, or adverse action related to the account; and all damages, penalties, and restitution available under state and federal law, including compensation for any tax harm or financial injury incurred.

**Count IX – Declaratory Relief: Settlement Agreement is Void for Lack of Consideration and Failure of Performance**

Against: Exeter Finance LLC and Cobra Equity Holdco LLC

167. I incorporate all preceding paragraphs by reference as though fully set forth herein.

168. On or about October 31, 2024, I entered into a written settlement agreement with Exeter Finance LLC, under which I paid $650 in full satisfaction of a disputed deficiency balance.

169. At the time this agreement was proposed, Exeter had already repossessed and sold the vehicle, failed to comply with the statutory post-sale notice and disclosure requirements mandated by A.R.S. §§ 47-9612 and 47-9616, and had previously collected more than $19,000 from me on a retail installment contract with a principal amount of $13,967.24.

170. Because Exeter failed to fulfill the statutory prerequisites necessary to legally assert a deficiency claim, it had no lawful right to collect any post-sale balance. Thus, the settlement agreement lacked lawful consideration and was procured through false pretenses regarding the enforceability of the alleged debt.

171. A valid and enforceable contract requires mutual assent and consideration. Here, the $650 payment was extracted under misrepresentations of legal liability, while Exeter and its parent company failed to perform or confer any legitimate

benefit in return. No new consideration was given in exchange for my performance under the contract.

172.    Further, Defendants breached the purpose of the agreement by continuing to report the account as derogatory and failing to remove or update the tradeline to reflect resolution, despite accepting payment under a "settlement in full" agreement.

173.    Accordingly, I seek declaratory judgment that the October 31, 2024 settlement agreement is void for lack of consideration and failure of performance, and that it confers no legal basis for any ongoing collection or credit reporting activity. I request rescission of the contract and restitution of the $650 payment, along with any other relief the Court deems proper in law or equity. For clarity, I expressly assert that rescission of the settlement agreement shall not operate to revive or reinstate the underlying loan contract or any alleged deficiency balance, which was already rendered unenforceable by operation of law under A.R.S. § 47-9626(A)(3) due to Exeter's failure to comply with mandatory post-repossession notice requirements.

174.    Under Arizona law, a contract that lacks mutual consideration or is not supported by performance is unenforceable and void. An agreement is deemed illusory when it imposes obligations on only one party while the other offers no enforceable promise or benefit in return, thereby failing to satisfy the requirements of contractual formation.

175.    I respectfully request a declaratory judgment that the October 31, 2024 settlement agreement is unenforceable due to lack of valid consideration, failure

of performance, and inequity in its formation and execution. I seek rescission of the agreement solely to the extent necessary to invalidate the coerced payment and any waivers, disclaimers, or releases it purported to impose. This request does not seek to revive any prior agreement or reestablish any previous contractual obligations that had already been discharged or extinguished. Rather, I request that the Court restore the parties to their pre-settlement position only to the extent necessary to ensure justice and prevent unjust enrichment.

**Count X – Violation of Arizona Credit Reporting Law (A.R.S. § 44-1694 et seq.)**

Against: Exeter Finance LLC and Cobra Equity Holdco LLC

176.    I incorporate all preceding paragraphs by reference as though fully set forth herein.

177.    Under A.R.S. § 44-1694(A)(1), a person or entity who furnishes information to a consumer reporting agency must not knowingly provide false information regarding a consumer's creditworthiness, credit standing, or credit capacity.

178.    After I submitted formal disputes to Experian, Equifax, and TransUnion in February, March, and April 2025, Exeter Finance LLC and Cobra Equity Holdco LLC were placed on clear notice that the tradeline being reported was inaccurate,

incomplete, and misleading in light of both the executed Settlement Agreement and the Form 1099-C indicating cancellation of debt.

179. Despite this statutory notice, Exeter continued to furnish derogatory credit information, falsely verifying the tradeline as "accurate" and failing to update, correct, or delete the account as required under Arizona law.

180. A.R.S. § 44-1694(A)(2) imposes an affirmative obligation on furnishers to notify consumer reporting agencies and correct previously reported information when they determine that such information is no longer accurate. Exeter and Cobra knowingly failed to fulfill this obligation.

181. The account reported by Defendants continued to reflect an alleged outstanding balance, charge-off status, and repossession—despite (a) the execution of a written agreement accepting $650 in full satisfaction, and (b) the issuance of a Form 1099-C indicating that the debt had been canceled for federal tax purposes.

182. These actions constitute a violation of A.R.S. § 44-1694(A)(1) and (2), which prohibit the knowing furnishing of inaccurate or incomplete credit information, especially after a furnisher has reason to know such information is no longer correct or has received direct notification from the consumer.

183. As a direct and proximate result of Defendants' violations, I suffered measurable harm, including but not limited to: repeated denials of vehicle financing, material damage to my credit score, extended vehicle rental expenses exceeding $15,000, and reputational harm impacting my ability to transact in good faith with lenders.

184.     I am entitled to actual damages, statutory damages pursuant to A.R.S. § 44-1695, punitive damages where appropriate, injunctive relief ordering correction or removal of the tradeline, and all other legal or equitable relief this Court deems just and proper.

## Count XI – Common Law Fraud / Intentional Misrepresentation

Against: Exeter Finance LLC and Cobra Equity Holdco LLC

185.     I incorporate all preceding paragraphs by reference as though fully set forth herein.

186.     Under Arizona law, a claim for fraud requires: (1) a false representation or concealment of a material fact; (2) knowledge of its falsity or reckless disregard for the truth; (3) intent to induce reliance; (4) justifiable reliance by the plaintiff; and (5) resulting damages.

187.     Exeter Finance LLC and Cobra Equity Holdco LLC made multiple false representations and material omissions regarding the legal existence and enforceability of a deficiency balance following repossession and sale of my vehicle.

188.     Specifically, Defendants:

(a) Claimed I owed $8,599.72 after repossession, without complying with A.R.S. §§ 47-9612 and 9616, thereby forfeiting any legal right to a deficiency;

(b) Issued a Form 1099-C canceling the alleged debt while continuing to report the account as charged-off, delinquent, and in collections;

(c) Presented the $650 settlement offer as a binding legal resolution of a still-valid debt, despite having already canceled the account for tax purposes;

(d) Verified the tradeline as accurate to credit bureaus even after receiving formal disputes and documentation showing the account had been settled and canceled.

189.    Defendants knew, or acted with reckless disregard for the fact, that these representations were false. They possessed internal records confirming the issuance of the 1099-C, the settlement acceptance, and their failure to comply with Arizona's UCC notice requirements.

190.    I reasonably relied on these misrepresentations and omissions when I paid the $650 settlement and refrained from pursuing other remedies. I believed the payment would resolve the debt and remove the derogatory tradeline.

191.    My reliance was justified because Defendants held themselves out as legitimate creditors, actively concealed statutory violations, and misrepresented the legal effect of both the 1099-C and the settlement.

192.    As a direct and proximate result of this fraudulent conduct, I suffered measurable damages, including but not limited to: the $650 coerced payment, loss of vehicle financing opportunities, increased rental vehicle costs, and reputational damage caused by false credit reporting.

193.    Defendants' conduct was malicious, oppressive, and undertaken with willful disregard for my rights and for clear statutory mandates. I am entitled to

actual damages, punitive damages, and any equitable relief the Court deems just and proper under Arizona tort law.

**Count XII – Promissory Estoppel**

Against: Exeter Finance LLC and Cobra Equity Holdco LLC

194.    I incorporate all preceding paragraphs by reference as though fully set forth herein.

195.    Under Arizona law, promissory estoppel applies when:

(1) a promise is made;

(2) the promisor should reasonably expect to induce action or forbearance;

(3) the promisee actually and reasonably relies on the promise; and

(4) injustice can be avoided only by enforcing the promise.

196.    Exeter Finance LLC, acting on its own behalf and/or as an agent of Cobra Equity Holdco LLC, expressly represented that by paying $650 in full settlement of the alleged deficiency, the account would be resolved and accurately reported as satisfied on my credit reports.

197.    I reasonably relied on these representations. The agreement lacked any disclaimer or indication that derogatory credit reporting would persist. The promise was clear and unambiguous on its face.

198.    Despite accepting the payment and issuing a Form 1099-C to signify cancellation of the debt, Defendants continued furnishing derogatory information to Experian, Equifax, and TransUnion, falsely maintaining the account as charged off and in collections.

199.    My reliance on the promise was both actual and reasonable. At no time did Defendants disclose that the tradeline would remain derogatory or that they would continue treating the debt as active post-settlement.

200.    As a direct and proximate result of this reliance, I suffered tangible and foreseeable harm, including loss of the $650 payment, denial of vehicle financing, inflated rental vehicle expenses, and reputational damage stemming from continued negative credit reporting.

201.    Injustice can only be avoided by enforcing the original promise. I respectfully request equitable enforcement of the promise, rescission of the settlement payment, and restitution or damages in an amount deemed just by the Court.

**Count XIII – Declaratory Relief: Tradeline Is Legally Void and Misleading**

Against: Exeter Finance LLC and Cobra Equity Holdco LLC

202.    I incorporate all preceding paragraphs by reference as though fully set forth herein.

203.     Pursuant to A.R.S. § 12-1831 and Rule 57 of the Federal Rules of Civil Procedure, I seek a declaratory judgment that the credit tradeline associated with the vehicle loan serviced by Exeter Finance LLC and overseen by Cobra Equity Holdco LLC is materially inaccurate, misleading, and legally void in its current form.

204.     The tradeline continues to report a charge-off, repossession, and unpaid balance, despite the following uncontested facts:

- I paid a total of **$19,905.89** over the course of the loan;

- The vehicle was repossessed and sold;

- Exeter failed to provide the required post-sale notices under A.R.S. §§ 47-9612 and 9616, thereby forfeiting its right to collect a deficiency under A.R.S. § 47-9626(A)(3);

- I subsequently paid $650 pursuant to a written settlement agreement; and

- Cobra subsequently issued a **Form 1099-C** canceling the account as discharged debt.

205.     A tradeline that reflects a charge-off and outstanding deficiency on a debt that has been settled, canceled via IRS reporting, and discharged under state law is legally and factually inaccurate. Such reporting is inherently misleading and creates a materially false impression of my creditworthiness.

206.     Defendants' continued furnishing of this tradeline violates:

- The Fair Credit Reporting Act, 15 U.S.C. § 1681s-2(a)(1)(A), which prohibits furnishing inaccurate information;

- Arizona's Credit Reporting Act, A.R.S. § 44-1694(A), which prohibits furnishing information that is known to be false or materially incomplete; and

- Equitable principles against reputational harm and unjust enrichment.

207.    As a direct result of this tradeline, I have suffered and continue to suffer actual harm, including:

- Denial of vehicle and personal financing opportunities;

- Substantial rental vehicle expenses incurred due to lack of financing; and

- Reputational damage affecting both personal and professional aspects of my life.

208.    I respectfully request that the Court enter a declaratory judgment finding that:

(a) The tradeline associated with this account is inaccurate, misleading, and void as a matter of law;

(b) The account must be corrected or permanently removed from all consumer credit reports; and

(c) Defendants are enjoined from furnishing any further derogatory or misleading information concerning this account.

**Count XIV – Breach of the Covenant of Good Faith and Fair Dealing**

Against: Exeter Finance LLC and Cobra Equity Holdco LLC

209. I incorporate all preceding paragraphs by reference as though fully set forth herein.

210. Under Arizona law, every contract includes an implied covenant of good faith and fair dealing, which prohibits either party from taking action that unfairly interferes with the other party's right to receive the benefits of the agreement. *See* **Wells Fargo Bank v. Ariz. Laborers, Teamsters & Cement Masons Local No. 395 Pension Trust Fund**, 201 Ariz. 474, 491 ¶ 59 (2002).

211. I entered into two distinct contracts with Defendants:

(a) A retail installment agreement executed on July 25, 2020; and

(b) A written settlement agreement executed on or about October 31, 2024.

212. In both instances, I performed in good faith—remitting over $19,905.89 under the original retail installment contract and later paying $650 in full satisfaction of the disputed deficiency balance pursuant to the settlement agreement.

213. Despite my good-faith performance, Defendants leveraged their superior knowledge, resources, and control over credit reporting systems to deliberately withhold the core benefits promised to me—specifically, accurate credit reporting, formal account closure, and relief from ongoing collection activity.

214.    With respect to the original retail installment contract, Defendants charged a 26.25% APR, collected over $19,000 in payments, repossessed the vehicle, and subsequently demanded an inflated deficiency balance they had no legal right to pursue under A.R.S. § 47-9626 due to their failure to comply with statutory post-sale requirements.

215.    With respect to the settlement agreement, Defendants accepted my $650 payment, issued a Form 1099-C representing cancellation of the remaining debt, and then continued to report the account as charged-off and in collections— thereby retaining the financial and reputational benefits of settlement while denying me the benefit of final resolution.

216.    Defendants engaged in this conduct intentionally and in bad faith. They weaponized the contractual terms to extract monetary and reputational benefit while knowingly depriving me of the core benefit of each agreement.

217.    This conduct violated the implied covenant of good faith and fair dealing inherent in both contracts and was intended to frustrate my ability to restore my credit, secure financing, or move forward from a resolved obligation.

218.    As a direct and foreseeable result, I suffered economic losses, reputational harm, multiple financing denials, and ongoing emotional distress stemming from Defendants' continued misconduct.

219.    I respectfully request all available remedies for breach of the covenant of good faith and fair dealing, including actual damages, punitive damages, and any equitable relief authorized under Arizona law.

**Count XV – Negligent Misrepresentation (Common Law – Arizona)**

Against: Exeter Finance LLC and Cobra Equity Holdco LLC

220.     I incorporate all preceding paragraphs by reference as though fully set forth herein.

221.     Under Arizona law, a claim for negligent misrepresentation requires proof that:

(1) the defendant supplied false information in the course of a business transaction;

(2) the defendant failed to exercise reasonable care or competence in obtaining or communicating the information;

(3) the plaintiff justifiably relied on the false information; and

(4) the plaintiff suffered resulting damages.

222.     Exeter Finance LLC and Cobra Equity Holdco LLC misrepresented and/or omitted material facts regarding the legal status of the alleged deficiency balance, the enforceability of the debt, and the finality of the account following settlement.

223.     Specifically, Defendants:

(a) Represented the deficiency balance as legally collectible despite forfeiting any right to collect under A.R.S. § 47-9626(A)(3);

(b) Demanded a $650 payment without disclosing legal defects affecting enforcement of the alleged debt;

(c) Accepted the $650 payment without informing me that a Form 1099-C would

70

later be issued under Cobra Equity Holdco LLC's name, evidencing cancellation of the same debt; and

(d) Continued to report the account as active and derogatory with credit bureaus even after accepting full settlement and declaring cancellation.

224.    Defendants failed to exercise reasonable care or competence in reviewing and applying applicable legal standards under Arizona's Uniform Commercial Code, Internal Revenue Service regulations, and federal and state consumer reporting laws before verifying, communicating, and attempting to enforce the alleged balance.

225.    I reasonably relied on the express and implied representations made by Defendants, including those contained in their written communications and the executed settlement agreement, when I paid $650 in full satisfaction of the balance and believed the account would be resolved.

226.    As a direct and foreseeable result of Defendants' negligent misrepresentations, I suffered concrete financial loss, including credit denials, reputational harm, emotional distress, and over $15,000 in vehicle rental expenses.

227.    I am entitled to actual damages, equitable restitution, and such other relief as the Court deems just and appropriate under Arizona tort law.

**Count XVI – Civil Conspiracy**

Against: Exeter Finance LLC and Cobra Equity Holdco LLC

228.    I incorporate all preceding paragraphs by reference as though fully set forth herein.

229.    Under Arizona common law, a civil conspiracy occurs when two or more persons agree, either expressly or tacitly, to accomplish an unlawful purpose, or to accomplish a lawful purpose by unlawful means, and one or more of the parties commits an overt act in furtherance of the conspiracy, causing harm to another.

230.    Exeter Finance LLC and Cobra Equity Holdco LLC entered into a coordinated agreement or mutual understanding to carry out a series of unlawful actions related to my auto loan, including but not limited to:

(a) conducting a repossession and asserting a deficiency in violation of A.R.S. §§ 47-9612 and 9626;

(b) demanding settlement on a debt they had no legal right to enforce;

(c) issuing a Form 1099-C canceling the debt while continuing to act as if it remained collectible; and

(d) jointly furnishing derogatory credit information that was false and misleading in violation of A.R.S. § 44-1694 and 15 U.S.C. § 1681s-2.

231.    In November 2024, Cobra Equity Holdco LLC issued a Form 1099-C canceling the alleged deficiency balance, using its own federal employer identification number. This evidences Cobra's direct involvement in the

management, resolution, and financial accounting of the account, and confirms that it acted as more than a passive parent company.

232.    Exeter Finance LLC repossessed the vehicle in 2023, demanded an unlawful deficiency without complying with A.R.S. §§ 47-9612 and 9616, induced a $650 payment under the guise of a valid settlement, and continued furnishing derogatory credit data even after the debt was canceled through Cobra's issuance of a 1099-C.

233.    Although Defendants represented that the vehicle had been lawfully sold after repossession, I remain the registered owner of the vehicle in the Arizona Department of Transportation Motor Vehicle Division (MVD) system as of 2025. This strongly suggests that Defendants never properly transferred legal title, and raises serious questions as to the validity and truthfulness of their post-repossession claims.

234.    Defendants jointly benefitted from this coordinated scheme: Exeter collected over $19,000 in payments, seized the vehicle, extracted an additional $650, and continued to report the tradeline as delinquent. Meanwhile, Cobra declared the debt canceled for federal tax purposes—creating a tax shield—while allowing the account to remain reported as unpaid and collectible.

235.    This dual-track conduct—representing to the IRS that the debt was extinguished while simultaneously profiting from continued collection and negative credit reporting—demonstrates a concerted and intentional plan between Exeter and Cobra to mislead me, impair my rights, and unjustly enrich themselves through contradictory legal positions.

73

236.    The close timing of their coordinated acts—Cobra issuing the 1099-C shortly after receiving my $650 payment, and Exeter furnishing a retaliatory tradeline update within 24 hours of my formal demand letter—confirms the existence of a shared unlawful objective executed through deliberate and unlawful means.

237.    The acts described above constitute overt acts in furtherance of a civil conspiracy between Exeter Finance LLC and Cobra Equity Holdco LLC to accomplish unlawful objectives or lawful objectives through unlawful means, including but not limited to:

(a) Knowingly verifying a materially false and misleading credit tradeline with consumer reporting agencies;

(b) Issuing a Form 1099-C that misrepresented the finality and disposition of the debt while continuing to treat it as collectible;

(c) Demanding and collecting a deficiency balance in violation of A.R.S. § 47-9626 due to their failure to comply with post-repossession notice requirements;

(d) Failing to lawfully transfer title of the repossessed vehicle, despite claiming it was sold; and

(e) Coordinating adverse credit reporting activity within days of receiving my demand letter, in retaliation for my protected exercise of legal rights under consumer protection laws.

238.    As a direct and proximate result of Defendants' conspiracy and overt unlawful acts, I suffered substantial harm, including:

- Permanent loss of vehicle ownership despite substantial payments;

- Over $15,000 in rental vehicle expenses;

    • More than $500,000 in lost vehicle financing opportunities;

    • Reputational harm resulting from continued derogatory credit reporting; and

- Emotional distress, anxiety, and disruption to my professional and personal life.

239.    I respectfully request that the Court award full legal and equitable relief for Defendants' civil conspiracy, including compensatory damages, punitive damages to deter future misconduct, and any further relief necessary to ensure that Defendants cannot conceal, perpetuate, or replicate this coordinated and unlawful scheme.

## COUNT XVII – REQUEST FOR INJUNCTIVE AND EQUITABLE RELIEF

Against: Exeter Finance LLC and Cobra Equity Holdco LLC

240.    I incorporate all preceding paragraphs by reference as though fully set forth herein.

241.    Immediate and permanent injunctive relief is warranted to prevent Defendants from continuing their unlawful conduct and to avert irreparable harm to my credit standing, professional reputation, and financial stability.

242.    Despite executing a written settlement agreement, issuing a Form 1099-C, and receiving repeated formal disputes and legal notifications, Defendants continue to knowingly furnish false and derogatory credit information to consumer reporting agencies.

243.    The tradeline associated with the subject account is still reported as charged-off, repossession, in collections, and delinquent—even though (1) the account was settled; (2) a debt cancellation form was issued; and (3) any right to deficiency collection was extinguished under A.R.S. § 47-9626.

244.    I remain the legal owner of the repossessed vehicle according to Arizona Department of Transportation (MVD) records as of 2025, despite Defendants' claims that the vehicle was sold. This inconsistency underscores ongoing statutory violations and continuing harm.

245.    Defendants' conduct is unlawful and ongoing. Each day that inaccurate credit information is furnished, I incur additional harm to my creditworthiness, reputation, and access to essential financial services. These reputational and economic injuries are cumulative and not fully remediable through monetary damages alone, thereby justifying equitable intervention to prevent continued harm.

246.    I have been denied vehicle financing on multiple occasions, resulting in cumulative rental expenses exceeding $15,000. These losses are directly

attributable to the presence of a derogatory tradeline that should have been corrected or removed.

247.    The harm to my credit profile, reputation in commerce, and consumer standing is active, compounding, and only partially compensable through legal remedies. Equitable relief is necessary to prevent further injury, protect my access to credit, and stop ongoing statutory violations.

248.    I therefore respectfully request that the Court issue preliminary and permanent injunctive relief pursuant to Rule 65 of the Federal Rules of Civil Procedure and A.R.S. § 12-1801 et seq., enjoining Defendants from:

a. Furnishing any further credit information to any consumer reporting agency regarding the account identified in this complaint;

b. Communicating to any third party that the vehicle is in repossession and that any balance remains due, settled for less or owing on this account;

c. Taking any further action to collect, assign, sell, or enforce any obligation tied to this account;

d. Failing to immediately correct or remove the tradeline associated with this account from Experian, Equifax, and TransUnion;

e. Failing to notify the Arizona Department of Transportation Motor Vehicle Division that legal ownership of the repossessed vehicle has transferred, or to correct the vehicle title to reflect the accurate post-sale status.

249.     Injunctive relief is necessary to prevent continued misuse of state and federal credit reporting systems and to preserve the status quo pending final adjudication. The balance of hardships weighs strongly in favor of granting relief, and the public interest is best served by halting ongoing violations that harm not only the Plaintiff but the integrity of consumer reporting processes.

## VI. VIOLATION OF THE TRUTH IN LENDING ACT (TILA), 15 U.S.C. § 1601 ET SEQ.

## AGAINST: EXETER FINANCE LLC

250.     I incorporate all preceding paragraphs by reference as though fully set forth herein.

251.     The Truth in Lending Act (TILA), 15 U.S.C. § 1601 et seq., and its implementing regulation, Regulation Z (12 C.F.R. § 1026), require creditors to provide clear, accurate, and conspicuous disclosures of all material credit terms, including but not limited to the annual percentage rate (APR), finance charges, amount financed, payment schedule, and total of payments.

252.     Defendant Exeter Finance LLC, as the assignee of the retail installment contract, is considered a creditor under TILA and is liable for disclosure violations that are apparent on the face of the contract, pursuant to 15 U.S.C. § 1641(a).

253.    The subject agreement disclosed an annual percentage rate of 26.25%, a finance charge exceeding $14,000, and a total repayment obligation of $28,149.84. These amounts, when coupled with the failure to highlight the total cost of credit in a clear and understandable format, rendered the disclosure substantively unconscionable and noncompliant with TILA's core mandates.

254.    Upon information and belief, the required TILA disclosures were not properly segregated from other contractual language, were not provided in a "clear and conspicuous" manner as required by 15 U.S.C. § 1632(a), and failed to adequately inform me of the true nature and cost of the credit extended.

255.    Defendant further violated TILA by materially altering the loan status following default and post-settlement—such as reporting charge-off status and continuing collections—without providing updated or corrected disclosures concerning the remaining balance, interest accrual (if any), or legal enforceability of the obligation.

256.    These failures constitute violations of 15 U.S.C. §§ 1631 and 1632, and applicable provisions of Regulation Z, including but not limited to §§ 1026.17, 1026.18, and 1026.20.

257.    As a direct and proximate result of these violations, I suffered actual damages including financial harm, coercion into a post-default settlement without meaningful understanding of rights or obligations, and long-term credit damage resulting from misleading or incomplete loan disclosures.

258.    I seek actual damages, statutory damages under 15 U.S.C. § 1640(a), attorney-equivalent fees and costs, rescission of any unlawful or unenforceable

contract terms, and any further relief this Court deems just and proper under TILA and its implementing regulations.

## VII. TIMELINESS OF CLAIMS AND STATUTE OF LIMITATIONS PRESERVATION

259.    I affirmatively plead that all claims asserted in this Complaint are timely filed within the applicable statutes of limitation under federal and Arizona law. To the extent necessary, I invoke the **discovery rule**, the **continuing violation doctrine**, and **equitable tolling** principles based on Defendants' ongoing misconduct, fraudulent concealment, and repeated failure to comply with legal duties—including furnishing corrected information, ceasing unlawful reporting, and providing required disclosures.

260.    Under the **Fair Credit Reporting Act (FCRA),** civil actions must be brought **within two years** from the date on which the plaintiff discovers the violation, and in no event more than **five years from the date of the violation itself.** See **15 U.S.C. § 1681p.** I first discovered material violations—including false credit reporting after settlement, failure to update the account status post-Form 1099-C, and derogatory tradeline verification—in the period between **November 2024 and May 2025.** Accordingly, all FCRA-related claims are timely under both the **discovery rule** and the statute's five-year cap.

80

261.    Under the **Fair Debt Collection Practices Act (FDCPA),** claims must be brought **within one year** from the date of the alleged violation. See **15 U.S.C. § 1692k(d).** The acts forming the basis of my FDCPA claims—including unlawful collection demands, misleading settlement terms, and retaliatory credit reporting—occurred between **October 2024 and May 2025.** Therefore, my FDCPA claims are filed well within the statutory limitations period.

262.    Under the **Arizona Consumer Fraud Act (ACFA),** the limitations period is **one year from the date of discovery** of the fraud or misrepresentation. See **A.R.S. § 12-541(5).** The factual basis for my ACFA claims—including the misrepresentation of a legally extinguished deficiency, concealment of title irregularities, and post-settlement misconduct—was discovered **no earlier than late 2024,** and continued into **2025,** rendering these claims timely filed.

263.    Under Arizona law, claims for **fraud** and **negligent misrepresentation** are subject to a **three-year statute of limitations** from the date of discovery. See **A.R.S. § 12-543.** Breach of a written contract is subject to a **six-year limitations period.** See **A.R.S. § 12-548.** My claims for fraud, misrepresentation, and breach of contract arise from events occurring between **2023 and 2025,** including repossession without title transfer, collection of a disputed deficiency balance, and violation of settlement terms. These claims are therefore timely, as they fall well within the relevant statutory windows.

264.    I further assert that Defendants' **continuing violations**—including ongoing derogatory credit reporting, refusals to correct tradelines despite formal disputes, and retaliatory conduct following my **April 2025** legal notice—

constitute a pattern of unlawful activity that **tolls or extends** the applicable limitations periods. Their conduct supports application of the **continuing violation doctrine** and **equitable tolling**, particularly where damages are cumulative, and the underlying misconduct persists unabated.

265.    Accordingly, **no claim in this Complaint is time-barred.** Each cause of action is timely, properly preserved, and falls within the relevant statutes of limitation under federal and Arizona law. I reserve the right to present further evidence of tolling, concealment, and continuing injury at trial, if necessary.

## VIII. RESERVATION OF RIGHTS

266.    Plaintiff expressly reserves the right to submit additional exhibits, declarations, witness statements, expert opinions, and other evidentiary materials during discovery, motion practice, or at trial, as may become necessary to support any and all claims asserted in this Complaint. This includes—but is not limited to—evidence in rebuttal, impeachment, or supplementation of factual allegations as permitted under the Arizona Rules of Civil Procedure and applicable federal or local court rules.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in my favor and against Defendants **Exeter Finance LLC** and **Cobra Equity Holdco LLC**, and grant the following relief:

A. An order declaring that the credit tradeline associated with the subject auto loan is inaccurate, misleading, and legally void;

    **A(1).** An order declaring that Plaintiff holds no legal, equitable, or possessory interest in the subject vehicle—a **2016 Toyota Corolla, VIN ending in 38426**—and that all title, registration, financial liability, and associated obligations were extinguished as a matter of law upon the vehicle's repossession and/or sale;

B. An order requiring Defendants to **permanently delete** the tradeline associated with this account from all consumer reporting agencies and to **cease and desist from furnishing** any future information relating to the account;

C. An order declaring that the debt has been fully discharged, and that any further attempts to collect, verify, or report the obligation constitute unlawful conduct under federal and state law;

D. An order **rescinding the October 2024 settlement agreement** in its entirety on grounds of fraud, lack of consideration, unconscionability, and multiple statutory violations;

E. An order awarding **full restitution** of the $650 settlement payment, which was unlawfully induced through material misrepresentations, concealment, and coercive debt collection practices;

F. An award of **actual damages** for Defendants' violations of the **Fair Credit Reporting Act (FCRA), Fair Debt Collection Practices Act (FDCPA), Truth in Lending Act (TILA), Arizona Uniform Commercial Code (UCC)**, and the **Arizona Consumer Fraud Act (ACFA)**, including, without limitation, damages for:

- lost vehicle financing opportunities;

- forced rental car expenses;

- reputational and credit harm;

- emotional distress; and

- tax liability resulting from deceptive and untimely **Form 1099-C** reporting;

G. An award of **statutory damages** under:

- **15 U.S.C. §§ 1681n and 1681o** (FCRA);

- **15 U.S.C. § 1692k** (FDCPA); and

- **A.R.S. § 44-1695** (Arizona's FCRA analog),

  including all applicable **per-claim and per-violation statutory penalties** to which Plaintiff is entitled;

H. An award of **treble damages** pursuant to **A.R.S. § 44-1531(B)**, based on Defendants' **knowing and willful violations** of the Arizona Consumer Fraud Act and their intentional use of deceptive and coercive conduct;

84

I. An award of **equitable relief under the doctrine of unjust enrichment**, including but not limited to:

- disgorgement of profits obtained through the subject transaction; and

- restitution of such portion of the **$19,905.89 in loan payments** as this Court deems just and appropriate, given Defendants' statutory violations, retention of funds under void contract terms, and unlawful post-settlement conduct;

J. An award of **all court costs, filing fees, and litigation-related expenses**, including pro se litigation expenses and reasonable attorney-equivalent fees, to the fullest extent allowed under law and equity;

K. An order granting **temporary, preliminary, and permanent injunctive relief** enjoining Defendants, their successors, agents, and assigns from:

- furnishing any information related to the subject account to any consumer reporting agency;

- engaging in any further collection, assignment, or enforcement activity;

- misrepresenting the status or enforceability of the subject obligation in any context.

L. Entry of a **declaratory judgment** pursuant to **28 U.S.C. § 2201** and related Arizona law, declaring that:

- Defendants **violated the Fair Credit Reporting Act (FCRA), Fair Debt Collection Practices Act (FDCPA), Arizona Consumer Fraud Act (ACFA),** and the **Arizona Uniform Commercial Code (UCC)**; and

- The **credit tradeline** associated with the subject account is **inaccurate, misleading, and must be permanently deleted** from all consumer reporting agencies;

M. Such other and further **legal, equitable, or declaratory relief** as this Court deems **just, proper, and necessary** under the circumstances, including relief in the public interest to deter similar conduct;

N. An award of **compensatory, statutory, and equitable damages** in an amount exceeding **$1,893,979.18**, reflecting:

- Actual damages for lost financing, rental costs, reputational harm, emotional distress, and tax-related losses;

- Equitable restitution for unlawfully retained funds;

- Statutory damages and civil penalties;

- The **reasonable value of Plaintiff's legal/attorney fees** with **express reservation of the right** to seek **treble and punitive damages** under applicable statutes, including:

- **15 U.S.C. § 1681n(a)(2)** (willful FCRA violations),

- **15 U.S.C. § 1692k(a)(2)** (FDCPA), and

- **A.R.S. § 44-1531** (Arizona Consumer Fraud Act).

86

This request for relief is not speculative; it is **supported by documentary evidence, Defendants' own admissions**, and legally cognizable injuries. Plaintiff respectfully requests full relief necessary to restore her rights, rectify the misconduct at issue, and deter future violations. This demand is made in good faith and in compliance with **Rule 8 of the Federal Rules of Civil Procedure**.

O. That this Court **retain jurisdiction** over this matter for the purpose of enforcing any:

- Judgment,
- Order of injunctive relief,
- Declaratory ruling, or
- Equitable remedy,

  as may be necessary to ensure Defendants' **ongoing compliance** and prevent future misconduct.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, I hereby demand a trial by jury on all issues so triable.

**Respectfully submitted this 13th day of June, 2025.**

By: /s/ Carissa Perry

Carissa Perry

Pro Se Plaintiff


Carissa Perry

1408 E Saint Anne Ave

Phoenix, Az 85042

## VERIFICATION AND CERTIFICATION UNDER FEDERAL RULES

I, the undersigned Plaintiff, hereby certify under Federal Rule of Civil Procedure 11 that to the best of my knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

1. This pleading is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

2. The claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

3. The factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery;

4. The denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on: 6/13/25

Respectfully submitted,

**Carissa Perry**

1408 E Saint Anne Ave

Phoenix, Az 85042

89

**CERTIFICATE OF SERVICE**

I hereby certify that on June 13th 2025, I filed the foregoing Complaint with the Clerk of the Court. I further certify that a true and correct copy of the Complaint, along with the summons issued by the Clerk, will be served upon each Defendant in accordance with Rule 4 of the Federal Rules of Civil Procedure, by [select one: U.S. Marshal / private process server / certified mail (if permitted)] after the Court has ruled on my IFP application or upon payment of the required filing fees upon the following:

**Exeter Finance LLC**

c/o Corporation Service Company

7955 S. Priest Dr., Suite 102

Tempe, AZ 85284

**Cobra Equity Holdco LLC**

c/o Corporation Service Company

251 Little Falls Drive

Wilmington, DE 19808

By: /s/ Carissa Perry

Carissa Perry

1408 E Saint Anne Ave

Phoenix, Az 85042

Respectfully submitted,

**Carissa Perry**

90