✓ FILED ___ LODGED
___ RECEIVED ___ COPY
OCT 0 3 2025
CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY__________ DEPUTY

Carissa Perry
1408 E Saint Anne Ave
Phoenix, AZ 85042
(310) 488-8735
Cristylove828@gmail.com

**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA-PHOENIX DIVISION**

CARISSA PERRY

Plaintiff,

V.

EXETER FINANCE LLC;
COBRA EQUITY HOLDCO LLC,

Defendants.

No. 2:25-CV-01552-PHX-DWL

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS**

**1.** I, Plaintiff Carissa Perry, respectfully oppose Defendants Exeter Finance LLC and Cobra Equity Holdco LLC's Motion to Compel Arbitration and Stay Proceedings. Under the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1–4, and controlling Supreme Court precedent, arbitration is strictly a matter of consent—not coercion. Where the making, scope, or enforceability of an arbitration agreement is disputed, the federal district court—not an arbitrator—must decide those threshold questions. Rent-A-Center, W., Inc. v. Jackson, 561 U.S. 63, 70–71 (2010); First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 943–44 (1995).

**2.** This case presents precisely the contractual conflict identified by the Supreme Court in Coinbase, Inc. v. Suski, 602 U.S. ___, 2024 WL 2333424 (2024): two successive agreements with conflicting dispute-resolution terms. The later, post-repossession General Release and Settlement Agreement—drafted, executed, and relied upon by Defendants themselves—contains no arbitration clause, no delegation provision, and no incorporation of any prior arbitration term. Under Coinbase, it is for this Court, not an arbitrator, to determine which contract governs and whether arbitration may be compelled.

**3.** Plaintiff asserts federal statutory claims under the Fair Credit Reporting Act (FCRA), the Fair Debt Collection Practices Act (FDCPA), and the Truth in Lending Act (TILA). These claims arose after execution of the settlement agreement and fall outside the scope of any prior arbitration clause. Defendants' own language exempts such claims: "If federal law provides that a claim or dispute is not subject to binding arbitration, this arbitration provision shall not apply." Even if a valid clause once existed (it does not), these federal claims are categorically exempt and must be heard under 28 U.S.C. § 1331.

**4.** Defendants' Motion collapses procedurally and substantively. They never issued any demand for arbitration, never initiated informal resolution, never filed with any arbitral forum, and waited more than 60 days after service to raise arbitration for the first time—despite receiving Plaintiff's multiple written complaints and a filed CFPB report. These defects violate FAA § 4, which requires a movant to show that arbitration was "refused" before seeking judicial compulsion. This silent delay, paired with total failure to invoke arbitration in any pre-motion correspondence, bars their motion as a matter of federal law. Morgan v. Sundance, Inc., 142 S. Ct. 1708 (2022), squarely forecloses this kind of strategic ambush: parties who sit on arbitration rights through litigation conduct waive them.

**5.** More egregiously, Defendants now attempt to enforce a clause from a superseded agreement while ignoring the controlling post-repossession settlement they themselves drafted. They preserved lien rights in precise language but deliberately omitted arbitration. Under black-letter principles of integration and contra proferentem, this omission is construed against them as drafters. Their Motion is a textbook "bait-and-switch," misstates the governing contract, manipulates FAA principles, and seeks to immunize post-contract misconduct from Article III scrutiny. Coinbase prohibits this exact form of contractual sleight-of-hand.

**6.** Federal courts do not surrender jurisdiction on mere invocation of the word "arbitration." Where—as here—there is no valid or enforceable agreement governing the claims asserted, no delegation of arbitrability, and no procedural compliance with the FAA, the Motion must be denied in full. AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 339 (2011); Granite Rock Co. v. Int'l Bhd. of Teamsters, 561 U.S. 287, 299 (2010).

**7.** Plaintiff expressly reserves all rights and arguments as to jurisdiction, arbitrability, formation, waiver, supersession, unconscionability, scope, and enforceability, and does not waive any claim or position by filing this Opposition. This filing is supported by the accompanying Memorandum of Points and Authorities, declarations, and exhibits.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. LEGAL STANDARD: ARBITRATION CANNOT BE COMPELLED ABSENT A VALID, APPLICABLE AGREEMENT

**8.** The Federal Arbitration Act ("FAA") is not a free-floating invitation to privatize justice. It is strictly contractual. It authorizes a court to compel arbitration only where a party demonstrates an actual, enforceable, and applicable agreement to arbitrate—not merely where one is alleged. See 9 U.S.C. § 2 (agreements enforceable only "save upon such grounds as exist at law or in equity for the revocation of any contract"); AT&T Techs., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 648 (1986) ("[A] party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."). A valid agreement is a jurisdictional prerequisite, not a presumption.

**9.** party may seek a court order compelling arbitration only after showing all three of the following:

(A) that a valid written arbitration agreement exists,

(B) that the dispute falls within its scope, and

(C) that the opposing party has refused to arbitrate after receiving proper notice and demand.

See 9 U.S.C. § 4. These are not flexible suggestions; they are statutory preconditions. Federal courts lack authority to compel arbitration unless these elements are fully satisfied. Defendants meet none of them

**10.** Defendants never satisfied the threshold requirement of 10. Defendants never satisfied the threshold requirement of FAA § 4. They did not serve a written demand to arbitrate, did not notify Plaintiff of any election to arbitrate, did not initiate or identify any arbitral forum, did not contact AAA or any administrator, and did not provide Plaintiff any opportunity to accept or reject arbitration before filing this Motion.

**11.** Section 4 makes refusal a condition precedent to any order compelling arbitration: a movant must show not only a valid agreement but also that the opposing party "has failed, neglected, or refused" to arbitrate after receiving proper notice and demand. 9 U.S.C. § 4. Federal courts repeatedly hold that this element is not presumed. Dillard v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 961 F.2d 1148, 1154 (5th Cir. 1992) ("A refusal to arbitrate must be clear and unequivocal."); Matterhorn, Inc. v. NCR Corp.,

763 F.2d 866, 868 (7th Cir. 1985) ("The language of § 4 makes clear that a refusal to arbitrate is a condition precedent to a court's order compelling arbitration.").

**12.** Defendants' Motion contains no evidence of any demand, and thus no evidence of any refusal. Without a demand there can be no refusal. Without a refusal there can be no statutory basis for a court order under § 4. On that procedural defect alone, the Motion is fatally premature and must be denied.FAA § 4. They did not serve a written demand to arbitrate, did not notify Plaintiff of any election to arbitrate, did not initiate or identify any arbitral forum, did not contact AAAadministrator, and did not provide Plaintiff any opportunity to accept or reject arbitration before filing this Motion.

**13.** Prior to initiating this lawsuit, I sent multiple written demand letters and filed a formal complaint with the Consumer Financial Protection Bureau (CFPB), (Exhibit A) placing Defendants on clear notice of my intent to litigate. At no time did Defendants invoke arbitration, propose alternative dispute resolution, or serve a written demand to arbitrate. They were served with the Complaint by U.S. Marshal in accordance with Rule 4 and had more than sixty (60) days before filing their Motion—yet never initiated, demanded, or even referenced arbitration during that period. They did not contact the AAA or any other forum, did not provide any terms, and did not offer me an opportunity to accept or reject arbitration. Their failure to take any affirmative steps to demand arbitration, even after being served, bars their request under 9 U.S.C. § 4 and demonstrates both procedural default and intentional waiver.

**14.** Under Supreme Court precedent, arbitration rights—like any contractual right—may be waived by conduct inconsistent with an intent to arbitrate. Morgan v. Sundance, Inc., 142 S. Ct. 1708, 1713–14 (2022) ("A party waives its contractual right to arbitrate when it knowingly relinquishes that right by acting inconsistently with it."). Federal courts uniformly hold that a party's failure to timely demand arbitration after being placed on notice of a dispute constitutes waiver. See Martin v. Yasuda, 829 F.3d 1118, 1125–26 (9th Cir. 2016) (waiver found where defendant "acted inconsistently with the right to arbitrate" by litigating without asserting it). Here, Defendants' silence in the face of my demand letters, my CFPB complaint, and their receipt of formal service—followed by months of litigation conduct before ever mentioning arbitration—is textbook waiver. Having slept on their alleged right and engaged the judicial forum, they are estopped from using the FAA as a last-minute escape hatch.

**15.** Section 4 makes refusal a condition precedent to any order compelling arbitration: a movant must show not only a valid agreement but also that the opposing party "has failed, neglected, or refused" to arbitrate after receiving proper notice and demand. 9 U.S.C. § 4. Federal courts repeatedly hold that this element is not presumed. Dillard v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 961 F.2d 1148, 1154

(5th Cir. 1992) ("A refusal to arbitrate must be clear and unequivocal."); Matterhorn, Inc. v. NCR Corp., 763 F.2d 866, 868 (7th Cir. 1985) ("The language of § 4 makes clear that a refusal to arbitrate is a condition precedent to a court's order compelling arbitration.").

**16.** Defendants' Motion contains no evidence of any demand, and thus no evidence of any refusal. Without a demand there can be no refusal. Without a refusal there can be no statutory basis for a court order under § 4. On that procedural defect alone, the Motion is fatally premature and must be denied.and demand. 9 U.S.C. §

**17.** Gateway issues of arbitrability—including existence, formation, scope, and enforceability—are for the Court to decide, not arbitrators, unless delegation is "clear and unmistakable." First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995); Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 83 (2002); Granite Rock Co. v. Int'l Bhd. of Teamsters, 561 U.S. 287, 296–97 (2010). Federal courts are Article III tribunals, not rubber stamps for private contracts.

**18.** Delegation must be explicit, unmistakable, and unambiguous. Rent-A-Center, West, Inc. v. Jackson, 561 U.S. 63, 70–71 (2010); Henry Schein, Inc. v. Archer & White Sales, Inc., 139 S. Ct. 524, 530 (2019). Courts cannot infer delegation from silence, ambiguity, or equivocal language—especially in consumer contracts drafted by the stronger party.

**19.** No Delegation Exists Here—The Clause Is Ambiguous, Contradictory, and Legally Insufficient to Warrant FAA § 4 Relief.

I specifically challenge the enforceability of the arbitration clause—not just the contract overall—and that threshold question must be resolved by this Court, not an arbitrator. Defendants point to a sprawling, structurally incoherent clause that lacks any clear delegation of gateway issues. The language they cite—"any claim or dispute… including the interpretation and scope of this Arbitration Provision, and the arbitrability of the claim or dispute… shall, at your or our election, be resolved by neutral binding arbitration"—is not an enforceable delegation clause under federal law.

**20.** The phrase "shall… be resolved by arbitration… at your or our election" is internally contradictory. "Shall" signals an imperative, but "at your or our election" renders it conditional. It does not state that arbitration is mandatory or automatic, nor does it unambiguously vest authority over arbitrability with an arbitrator. Instead, the clause simply recites what could happen if one party elected arbitration. The FAA requires a clear, unmistakable, and non-contingent delegation. This is not that.

**21.** Critically, nowhere in this clause is there an express assignment of authority to determine arbitrability to an arbitrator. There is no reference to AAA Rule 7 or JAMS Rule 11. There is no incorporation of any institutional rules that confer gateway authority. In Rent-A-Center, 561 U.S. 63 (2010), the Supreme Court held that delegation provisions must be "clear and unmistakable." In First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938 (1995), the Court reaffirmed that ambiguity negates delegation. And in Henry Schein, Inc. v. Archer & White Sales, Inc., 139 S. Ct. 524 (2019), the Court noted that parties may agree to delegate arbitrability, but only when the contract says so in no uncertain terms. That is not the case here.

**22.** Furthermore, the clause contains an express carve-out—which fatally undermines any claim of total or automatic applicability. It reads:

> **"If federal law provides that a claim or dispute is not subject to binding arbitration, this Arbitration Provision shall not apply to such claim or dispute."**

**23.** This carve-out is not merely a suggestion—it is a built-in exemption that suspends the operation of the clause itself under specific conditions. It disqualifies the clause from reaching any claims that federal law deems inappropriate for binding arbitration. I bring federal statutory claims under the FDCPA, FCRA, and TILA, which—when based on post-contract conduct and systemic statutory violations—fall within precisely the sort of disputes courts routinely find unsuitable for private arbitration.

**24.** The clause is also riddled with inconsistencies. For example:

- It purports to govern "**any claim… in contract, tort, statute or otherwise… including claims involving third parties who do not sign the contract,**" yet
- It requires that arbitration proceed only "**at your or our election**"—a permissive standard that presumes a demand must be made and a refusal given.
- It simultaneously waives class actions and references "neutral binding arbitration" by organizations "**subject to our approval**," but never states which rules apply or who has authority over preliminary issues.

**25.** That is not a delegation clause. That is a legal smokescreen. In fact, the clause never once mentions the word "delegate," "delegation," "exclusive authority," or anything resembling language that would shift gateway decisions to an arbitrator. It also lacks any clause-severability language that would isolate delegation from other provisions, meaning that even if one portion failed, the rest would fall with it.

**26.** In Mastrobuono v. Shearson Lehman Hutton, Inc., 514 U.S. 52, 62–63 & n.10 (1995), the Court recognized that where one party drafts a contract, it "is more likely than the other party to have reason to know of uncertainties of meaning" and may even "leave meaning deliberately obscure." That is exactly what Defendants did here. Having drafted a clause so equivocal that it undermines its own operation, they cannot now rely on it to compel arbitration.

**27.** I raise a direct, facial challenge to the enforceability of this arbitration clause—and the FAA grants me that right. This Court retains jurisdiction under Rent-A-Center to resolve that challenge. There is no delegation clause to enforce. There is no mandatory arbitration to compel. There is no demand I ever refused. And there is no basis for this motion under 9 U.S.C. § 4.

**28.** Defendants' attempt to cast this convoluted and contingent clause as a clear delegation is not only legally incorrect—it is deceptive. And under well-settled Supreme Court precedent, it must be rejected.

- **A.** Plaintiff specifically challenges the arbitration clause itself, not merely the broader contract. Rent-A-Center requires courts—not arbitrators—to resolve that challenge. Id. at 71.
- **B.** Even if a delegation clause existed (it does not), this Court retains jurisdiction to decide whether the clause was waived, superseded, or rendered inapplicable by the parties' subsequent contract—the post-repossession Settlement Agreement. Those issues—formation, waiver, and supersession—are threshold questions of judicial competence, independently sufficient to deny the motion.
- **C.** Because no enforceable arbitration agreement governs these claims, because Defendants never issued a valid demand triggering FAA § 4, and because arbitrability has not been delegated, the Court—not an arbitrator—must decide these issues. Defendants' Motion is both procedurally and substantively defective and must be denied.

## II. THE SETTLEMENT AGREEMENT CONTROLS AND NO ENFORCEABLE ARBITRATION CLAUSE EXISTS

**29.** I respectfully assert that the controlling contract is not the 2020 Retail Installment Sales Contract but the General Release and Settlement Agreement executed on October 29, 2024 (by Plaintiff) and October 31, 2024 (by Exeter Finance LLC). Defendants themselves attached this Settlement Agreement as Exhibit B. This contract was not ancillary to the original installment agreement — it was a standalone, integrated, and comprehensive resolution of all remaining obligations following repossession. It contains no arbitration clause.

**30.** Under black-letter contract law, when parties enter a later written agreement covering the same subject matter, the later contract supersedes prior inconsistent terms unless expressly preserved. See Taylor v. State Farm Mut. Auto. Ins. Co., 175 Ariz. 148, 152 (1993); Restatement (Second) of Contracts § 213(1). The Settlement Agreement includes an express integration clause at § VIII, which states: "This Agreement reflects the entire agreement between the Parties. No statement, promise, or inducement not contained herein shall be valid or binding." This language extinguishes all prior provisions except those expressly incorporated. See Defendants Exhibit B (Settlement Agreement § VIII).

**31.** And Defendants did preserve terms — just not arbitration. In § I.A.iii of the Settlement Agreement, Defendants specifically wrote that "except as expressly provided in this Agreement, all other terms contained within the original contract, including without limitation those relating to Exeter's security interest in and lien on the vehicle, shall survive and are incorporated by reference." That is a textbook example of expressio unius est exclusio alterius — the mention of one thing excludes all others. Arbitration is conspicuously absent. Defendants preserved their lien rights with precision but elected not to preserve any arbitration clause. That silence is dispositive.

**32.** This was no accident. Defendants drafted the Settlement Agreement. They had every opportunity to include an arbitration clause or reference the one in the original contract. They did not. Under the doctrine of contra proferentem, any ambiguity is construed against the drafter. See Mastrobuono v. Shearson Lehman Hutton, Inc., 514 U.S. 52, 62 (1995). But this case does not involve ambiguity — it involves deliberate omission. Arbitration was left out, and the omission is binding.

**33.** Defendants may point to Section XII of the Settlement Agreement ("Enforcement of Agreement"), which reads: "In the event that one or more of the Parties institutes any legal action, arbitration, or other proceeding…" That clause is not an arbitration agreement — it is a fee-shifting provision that merely anticipates multiple possible forums. Its disjunctive structure — "legal action, arbitration, or other proceeding" — reaffirms that litigation was fully contemplated. Courts have repeatedly held that such language does not create a binding arbitration clause. See Anderson v. Dean Witter Reynolds, Inc., 306 F.3d 726, 740 (9th Cir. 2002).

**34.** Even if — hypothetically — the prior arbitration clause had survived, it includes a federal-law carve-out: "If federal law provides that a claim or dispute is not subject to binding arbitration, this arbitration provision shall not apply." That exemption applies here. My claims under the FDCPA, FCRA, and TILA — whether pre-settlement or post-settlement — arise under federal law, and the arbitration clause itself acknowledges those claims are not subject to binding arbitration.

**35.** The FAA does not force arbitration where no valid agreement exists. Section 2 of the FAA requires that any arbitration agreement be "valid, irrevocable, and enforceable." The statute does not permit courts to invent or imply arbitration obligations that were omitted from the parties' most recent contract. See AT&T Techs., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 648 (1986) ("A party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.").

**36.** The Arizona Revised Uniform Arbitration Act likewise requires a written and authenticated arbitration agreement. See A.R.S. § 12-3006(A). The Settlement Agreement contains no such provision. My signature on the final page does not transform a non-arbitration contract into an arbitration agreement. See North Valley Emergency Specialists, L.L.C. v. Santana, 208 Ariz. 301, 93 P.3d 501 (2004).

**37.** Defendants are attempting to judicially revive a term they deliberately omitted. That is not how contract law works. Arbitration is a matter of consent, not retroactive wish fulfillment. See Volt Info. Scis., Inc. v. Bd. of Trustees, 489 U.S. 468, 478 (1989). Courts do not rescue sophisticated parties from their own drafting decisions.

**38.** The only contract that now governs the parties' rights is the Settlement Agreement. It contains no arbitration clause. And even if one had survived from the earlier agreement, it expressly carves out the federal claims I assert. The FAA cannot be stretched to compel arbitration where the parties' own words and choices say otherwise.

Even if the Court were to find the clause facially applicable—despite the absence of delegation and the controlling 2024 Settlement Agreement—it would remain unenforceable under both federal and Arizona law. The arbitration language is structurally incoherent, procedurally ambiguous, and substantively unconscionable. It vaguely provides that "you or we may choose arbitration," with no mandatory trigger, no opt-in deadline, no procedural roadmap, and no identifiable arbitral forum unless unilaterally approved by the stronger party. It preserves only Exeter's self-help and litigation rights—including repossession and court enforcement—while denying the consumer any mutual escape. Courts interpreting such clauses routinely find them unconscionable, void for vagueness, or both. See Harrington v. Pulte Home Corp., 211 Ariz. 241, 247–48 (Ct. App. 2005) (arbitration agreement invalid where it lacked mutuality and created imbalance favoring the drafter); see also Chavez v. Bank of Am., 2014 WL 2159382, at *7 (D. Ariz. May 23, 2014) (clause unenforceable where essential terms like rules and forum were ambiguous); AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 339 (2011) (FAA § 2 permits invalidation of arbitration clauses on generally applicable contract grounds, including unconscionability). On those contract law principles alone, the clause is void and cannot be enforced.

**39.** For all of these reasons, I respectfully request that this Court deny the Motion to Compel Arbitration. The Settlement Agreement controls. It contains no arbitration clause. It was drafted by Defendants. And the carve-out clause within the prior contract exempts all of my federal claims. No valid, enforceable arbitration agreement exists, and the FAA cannot be used to fabricate one. The motion must be denied.

## III. POST-SETTLEMENT CONDUCT AND FEDERAL CLAIMS OUTSIDE ANY ARBITRATION CLAUSE

**40.** I assert, preserve, and do not waive any federal statutory claims arising both before and after the execution of the October 2024 Settlement Agreement. These include—but are not limited to—violations of the Fair Credit Reporting Act (FCRA), Fair Debt Collection Practices Act (FDCPA), and the Truth in Lending Act (TILA), along with related violations of federal regulations and consumer protection laws. To the extent any claims were unknown or undiscoverable at the time of settlement, I invoke the equitable discovery rule and Federal Rule of Civil Procedure 8(d) to plead in the alternative.

**41.** My present lawsuit arises from conduct that occurred entirely after execution of the Settlement Agreement and in violation of its terms. That includes:

- Post-settlement derogatory and inaccurate credit reporting;
- Improper and unlawful "verification" of tradelines with Experian and other bureaus;
- Misleading statements about the status of the settled debt;
- Improper use and timing of a Form 1099-C to inflate my tax exposure;
- And collection communications that directly contradicted the written release.

These are not residual effects of the original retail installment contract. These are new, independent statutory violations, grounded in Defendants' affirmative post-settlement misconduct.

**42.** It was precisely because Defendants breached the Settlement Agreement that I was forced to examine their entire course of conduct, including—but not limited to—their actions surrounding the original contract. The lawsuit I filed was not premised on a single dispute—it was the result of realizing that Defendants violated a binding settlement and then attempted to retroactively shield themselves behind a contract clause they themselves chose not to preserve. That conduct justifies federal jurisdiction and prohibits forced arbitration.

**43.** Even assuming arguendo that the 2020 arbitration clause somehow survived, it contains a dispositive carve-out:

That language exempts every one of my claims. The FDCPA, FCRA, and TILA are federal statutes with their own enforcement frameworks that permit federal court jurisdiction. This is not just contractual exclusion—it is statutory authority.

**44.** The FAA requires that arbitration agreements be enforced "according to their terms." See AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 339 (2011). When those terms include a carve-out, courts are bound to honor it. See Lamps Plus, Inc. v. Varela, 139 S. Ct. 1407, 1415 (2019). The clause was drafted by Defendants. They cannot now ask the Court to erase the exception they themselves created.

**45.** Jurisdiction lies with this Court under 28 U.S.C. § 1331. The FAA does not expand jurisdiction. It only enforces arbitration clauses when they exist and apply. See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 25 n.32 (1983). When the clause no longer exists—or expressly excludes federal claims—the FAA has nothing to enforce.

**46.** Furthermore, to the extent there is any ambiguity as to whether the clause could survive or apply to post-settlement conduct, that ambiguity must be construed against Defendants. See Mastrobuono v. Shearson Lehman Hutton, Inc., 514 U.S. 52, 62 (1995). They drafted both agreements. They preserved their lien. They excluded arbitration. And they chose to include a carve-out that exempts federal claims from arbitration. Courts do not rewrite contracts to rescue sophisticated parties from their omissions.

**47.** My claims—whether stemming from Defendants' original misconduct, their breach of the Settlement Agreement, or both—are governed by federal statutes. The relevant clause excludes those claims. The controlling contract omits arbitration entirely. And the FAA does not permit compelled arbitration in these circumstances.

**48.** Accordingly, I respectfully request that the Court deny the Motion to Compel Arbitration as to all federal statutory claims. These are not subject to arbitration under the contract, not subject to arbitration under the statute, and not within the jurisdictional reach of the FAA. This Court alone has the authority to resolve them.

## IV. DEFENDANTS WAIVED ANY ARBITRATION RIGHT THROUGH DELAY, CONDUCT, AND FAILURE TO INVOKE IT PROPERLY

**49.**Even assuming an arbitration clause once existed (it does not), Defendants forfeited any ability to compel arbitration by their own conduct. Under Morgan v. Sundance, Inc., 142 S. Ct. 1708, 1714 (2022), waiver applies when a party "acts inconsistently with the right to arbitrate," and courts may not impose a prejudice requirement. Waiver is measured by conduct—not by magic words in a contract.

**50.**Here, Defendants were personally served by the U.S. Marshal and were required to answer by September 19, 2024. They had more than sixty days from service to invoke arbitration but never did. They did not file or serve any arbitration demand, did not initiate proceedings before AAA or any other forum, did not propose arbitrators, did not seek a stay, and did not request my participation in any arbitral process. Instead, their first act in this Court was to file a Motion to Compel Arbitration—without ever making a demand or triggering the "refusal" element required by the FAA itself.

**51.**Even if Defendants later produce an email vaguely referencing an "agreement to arbitrate," such a passing reference does not satisfy FAA § 4. Section 4 authorizes courts to compel arbitration only where the movant shows: (A) a valid agreement; (B) a dispute within its scope; and (C) that the opposing party "has failed, neglected, or refused" to arbitrate after receiving proper notice and demand. 9 U.S.C. § 4. A stray remark about arbitration is not a "demand" under federal law. It does not identify a forum, does not initiate proceedings, and does not give the other party an opportunity to accept or refuse. Without a valid demand, there can be no refusal; without refusal, there is no statutory basis for a motion to compel. See Matterhorn, Inc. v. NCR Corp., 763 F.2d 866, 868 (7th Cir. 1985) ("A refusal to arbitrate is a condition precedent to a court's order compelling arbitration."); Dillard v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 961 F.2d 1148, 1154 (5th Cir. 1992) ("A refusal to arbitrate must be clear and unequivocal.").

**52.**Defendants' litigation conduct confirms waiver. They ignored my multiple written demand letters and CFPB complaint; they declined every opportunity to request arbitration or propose ADR; they did not raise arbitration as an affirmative defense; and they appeared in this Court as litigants, not as parties invoking a private forum. Under Morgan, such inconsistent conduct forfeits any right to arbitrate, "even absent a showing of prejudice." 142 S. Ct. at 1714.

**53.**Defendants drafted the original clause and the later Settlement Agreement. They had every procedural and contractual tool available to preserve arbitration but deliberately chose not to use them. Having sat silent for months, and having elected to appear in court rather than initiate arbitration, they cannot now invoke the FAA as a last-minute escape hatch. Federal courts are not obliged to rescue sophisticated drafters from their own strategic decisions. See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,

460 U.S. 1, 25 n.32 (1983) (FAA does not enlarge federal jurisdiction or override procedural prerequisites).

**54.**On this record, waiver is established as a matter of law. Defendants did not make a timely, documented demand for arbitration; they did not comply with FAA § 4's prerequisites; and they acted wholly inconsistent with any purported arbitration right. Under Morgan and Matterhorn, that conduct bars enforcement of any arbitration clause—even if one had survived. Their Motion must be denied on waiver grounds alone.

## V. THIS COURT ALONE MUST DECIDE ARBITRABILITY, ENFORCEABILITY, AND JURISDICTIONAL SCOPE

**55.**Even if the Court were to accept Defendants' characterization of the underlying arbitration clause (which it should not), threshold questions of arbitrability remain firmly within judicial—not arbitral—competence. Under binding Supreme Court precedent, the existence, scope, enforceability, and survival of an arbitration agreement are for the Court to determine absent a "clear and unmistakable" delegation. See First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995); Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 83 (2002); Granite Rock Co. v. Int'l Bhd. of Teamsters, 561 U.S. 287, 296 (2010).

**56.**There is no "clear and unmistakable" delegation here. The alleged clause uses permissive language ("may choose"), contains no express delegation, incorporates no institutional rules such as AAA Rule 7, and is riddled with ambiguity and carve-outs. Courts do not infer delegation from silence or structural incoherence. See Rent-A-Center, W., Inc. v. Jackson, 561 U.S. 63, 70–71 (2010).

**57.**Moreover, whether any clause survives a later, integrated settlement agreement is a classic matter of contract formation and scope—precisely the kind of gateway issue courts must resolve. See Coinbase, Inc. v. Suski, 602 U.S. ___, 2024 WL 2333424, at *3 (2024) ("Before either the delegation provision or the forum selection clause can be enforced, a court needs to decide what the parties have agreed to—i.e., which contract controls.").

**58.**Finally, the FAA does not empower arbitrators to decide jurisdiction. It empowers courts to decide whether arbitration is even available under the contract. See 9 U.S.C. § 4. Because I challenge the arbitration clause directly—and because no delegation provision exists—this Court alone must decide arbitrability.

**59.**For all these reasons, I respectfully submit that this Court retains jurisdiction to resolve every threshold issue of contract formation, enforcement, and scope, and to deny the Motion to Compel Arbitration accordingly.

**VI. EQUITY AND PUBLIC POLICY DEMAND FEDERAL COURT REVIEW**

**60.** Plaintiff's claims arise from a unified and continuous pattern of unlawful conduct by Defendants—spanning both the period under the original Retail Installment Contract and the time following the October 2024 Settlement Agreement. While some of the factual background predates the Settlement, Plaintiff's claims are based exclusively on violations of federal law, including the Fair Debt Collection Practices Act (FDCPA), Fair Credit Reporting Act (FCRA), and the Truth in Lending Act (TILA). None of Plaintiff's claims seek to enforce the terms of the 2020 Retail Installment Contract. Rather, they arise from Defendants' independent and ongoing misconduct, culminating in actionable harm after the Settlement Agreement took effect.

**61.** Importantly, the operative Settlement Agreement—dated October 2024—contains no arbitration clause and includes a clear integration provision. Defendants cannot resurrect a stale clause from a prior agreement to avoid liability for new violations governed by federal statutory rights. The absence of an arbitration clause in the controlling contract is not accidental. It reflects the parties' intent to fully resolve any disputes by final settlement and to preserve Plaintiff's rights under applicable law, including judicial remedies. To the extent Defendants now seek to relitigate those obligations through a retroactive invocation of arbitration, such conduct is inequitable and contrary to the settled expectations of the parties.

**62.** Moreover, even if certain factual allegations arose prior to the Settlement Agreement, the legal causes of action asserted in the Complaint do not derive from that earlier contract. They arise from Defendants' pattern of misconduct—including false credit reporting, unlawful debt collection activity, and bad-faith post-settlement conduct—which continued well after the Settlement. Plaintiff does not rely on the 2020 agreement for any claim or relief. Federal courts have consistently held that arbitration cannot be compelled where the claims are based on independent statutory rights, particularly where the relevant contract containing the arbitration clause has been superseded by a subsequent agreement omitting arbitration. See Chastain v. Robinson-Humphrey Co., Inc., 957 F.2d 851, 854 (11th Cir. 1992) ("A party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."); EEOC v. Waffle House, Inc., 534 U.S. 279, 294 (2002).

**63.** Public policy, equity, and Article III of the U.S. Constitution weigh heavily against allowing Defendants to sidestep judicial review. Arbitration must not be used as a post hoc shield to avoid scrutiny under federal law. The Supreme Court has reaffirmed that arbitration is a matter of contract and consent—not coercion. See AT&T Techs., Inc. v. Communications Workers of Am., 475 U.S. 643, 648 (1986). Defendants cannot consent to federal litigation by settling a prior agreement, omit arbitration from the resulting contract, and then invoke arbitration only after being sued. The Federal Arbitration Act (FAA) does not authorize parties to manipulate jurisdiction in this manner.

**64.** For these reasons, equity and public policy demand that this Court retain jurisdiction. Plaintiff filed in federal court in good faith, asserting federal claims arising from post-settlement misconduct and earlier misrepresentations that form part of a continuing statutory violation. No valid or enforceable arbitration agreement governs this dispute. Accordingly, the Motion to Compel Arbitration must be denied.

## VII. CONCLUSION AND REQUEST FOR RELIEF

**65.**I respectfully submit that Defendants' Motion to Compel Arbitration must be denied as a matter of law, equity, and judicial authority. There is no valid, enforceable arbitration agreement, no procedural compliance with the FAA, and no factual or legal basis for divesting this Court of Article III jurisdiction under 28 U.S.C. §§ 1331 and 1367.

**66.**First, the controlling contract—the October 2024 Settlement Agreement—contains no arbitration clause whatsoever. It includes a fully integrated merger clause, extinguishing all prior terms and agreements. Under black-letter contract law and FAA § 2, arbitration may only be compelled where the agreement to arbitrate is both valid and enforceable. This one is neither.

**67.**Second, even if Defendants attempt to invoke the outdated 2020 Retail Installment Contract, they have failed to meet the mandatory statutory elements of FAA § 4. They never issued a written arbitration demand, never notified me of any election to arbitrate, never initiated any arbitral proceeding, and never triggered a "refusal" by me—which is a jurisdictional prerequisite. Without a demand, there can be no refusal. Without a refusal, there can be no court order. See 9 U.S.C. § 4; Dillard v. Merrill Lynch, 961 F.2d 1148, 1154 (5th Cir. 1992); Matterhorn, Inc. v. NCR Corp., 763 F.2d 866, 868 (7th Cir. 1985).

**68.**Third, Defendants waived arbitration through their litigation conduct and delay. They were served by the U.S. Marshal and waited more than 60 days—without raising arbitration as an affirmative defense,

without responding to my pre-litigation demands, and without initiating any arbitral forum—before filing this Motion. Under Morgan v. Sundance, 142 S. Ct. 1708 (2022), waiver is no longer tethered to prejudice. Delay, silence, and tactical gamesmanship alone can forfeit arbitral rights—and that is exactly what occurred here.

**69.**Fourth, the 2020 arbitration clause is procedurally and substantively unconscionable under both FAA § 2 and Arizona law. The clause is riddled with ambiguity ("you or we may choose arbitration"), offers carveouts solely in Defendants' favor (repossession, collection, litigation), and fails to designate any governing rules, forum, or procedure. It lacks mutuality, fails for vagueness, and is unenforceable as a matter of public policy. See Rent-A-Center, 561 U.S. 63, 70–71 (2010); A.R.S. § 12-1501; Broemmer v. Abortion Servs. of Phoenix, Ltd., 173 Ariz. 148 (1992).

**70.**Fifth, my claims arise from post-settlement, independent violations of federal law—including the Fair Debt Collection Practices Act (15 U.S.C. § 1692 et seq.), the Fair Credit Reporting Act (15 U.S.C. § 1681 et seq.), and the Truth in Lending Act (15 U.S.C. § 1601 et seq.)—all of which fall outside the scope of any prior agreement. Defendants' unlawful conduct occurred after the 2024 Settlement Agreement and seeks to weaponize a rescinded clause to escape liability for fresh misconduct. That attempt must be rejected.

**71.**Sixth, equity and public policy demand that this Court retain jurisdiction. Arbitration cannot serve as a safe harbor for deceptive post-settlement activity. The Federal Arbitration Act was never intended to shield creditors from judicial scrutiny when their misconduct violates federal statutes after a contract has been terminated and replaced. To enforce arbitration here would not only subvert § 1331 jurisdiction but would also reward Defendants for delay, concealment, and bad faith.

**72.**I filed this case in good faith. I invoked this Court's jurisdiction under the Constitution and laws of the United States. The record is clear: there is no valid agreement, no procedural compliance, and no legal authority supporting compelled arbitration. I respectfully ask this Court to exercise its jurisdiction, uphold the rule of law, and DENY Defendants' Motion to Compel Arbitration in full.

Respectfully submitted this 3rd day of October, 2025.

By:

Carissa Perry

Plaintiff, Pro Se

CERTIFICATE OF SERVICE

I hereby certify that on the 3rd day of October, 2025, I mailed a true and correct copy of the foregoing Plaintiff's Memorandum in Opposition to Defendants' Motion to Compel Arbitration, including all exhibits and declarations, to the following counsel of record:

Marvin C. Ruth (024220)

Coppersmith Brockelman PLC

2800 North Central Avenue, Suite 1200

Phoenix, Arizona 85004

Telephone: (602) 381-5460

Facsimile: (602) 224-6020

Email: mruth@cblawyers.com

Attorneys for Defendants Exeter Finance LLC and Cobra Equity Holdco LLC

Executed this 3rd day of October, 2025.

By:

Carissa Perry

Plaintiff, Pro Se